393 So.2d 552 (1980)
FLORIDA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,
v.
Gene W. RICE, Appellee.
No. MM-237.
District Court of Appeal of Florida, First District.
October 27, 1980.
Rehearing Denied December 8, 1980.
*553 Luke G. Galant, of Dawson, Galant, Maddox, Sulik & Nichols, Jacksonville, for appellant.
David R. Lewis and Fred C. Isaac, of Lewis, Paul, Isaac & Castillo, Jacksonville, for appellee.
BOOTH, Judge.
This cause is before us on appeal from a final judgment awarding damages in excess of policy limits against appellant, Florida Farm Bureau, based on its failure to defend its insured in a personal injury action brought by appellee, Rice. The instant case is predicated on the earlier personal injury action, wherein Gene Rice, as plaintiff, recovered a consent judgment of $75,000 plus costs against Wayne Eichholz, driver of the car which struck the motorcycle ridden by Rice. Eichholz was the insured under an automobile liability policy issued by Farm Bureau, but the insurer denied coverage for the accident and refused to defend Eichholz in the suit. The trial court appointed an attorney to represent Eichholz under the provisions of the Soldiers Civil Liberty Act,[1] and judgment was subsequently entered based on the consent agreement of attorneys for Eichholz and Rice. Thereafter, Rice brought suit as a third party beneficiary under Eichholz's policy against Farm Bureau for the full amount of the judgment obtained. The cause was tried by the court without a jury and resulted in the final judgment herein sought to be reviewed on the full amount of the personal injury judgment plus interest and costs.
The accident resulting in serious injury to Rice occurred on April 29, 1977. Rice was riding as a passenger on a motorcycle when struck by a Pontiac automobile driven by Wayne Eichholz and owned by Eichholz's mother-in-law, Evelyn Larsen. At the time of the accident, there was in effect a policy of automobile liability insurance issued to Eichholz, under which a pickup truck owned by Eichholz was the described vehicle. Mrs. Larsen had no insurance policy on her automobile.
Eichholz reported the collision to Farm Bureau through his agent, a file was opened on the claim and the agent took a recorded statement from Eichholz concerning the details of the collision and his possession and use of the Larsen automobile. A few weeks later, another Farm Bureau agent, Richard McCulloch, took over the claim file and advised both his principal, Farm Bureau, and the attorney for the plaintiff that there was no coverage under the policy because Mrs. Larsen was a member of the household and, also, because the automobile involved in the accident was regularly available for the use of her son-in-law.
After the foregoing determination was made by agent McCulloch, he took a second recorded statement from Eichholz, which indicated the incorrectness of the factual basis for denying coverage. This second interview revealed that, in fact, the mother-in-law was not a member of the Eichholz household and that the vehicle had been in a state of disrepair and non-operable until the day prior to the accident. Agent McCulloch, however, remained silent with regard to the second statement and did not *554 reveal the facts indicating there was coverage. Finally, the agent sent Farm Bureau's attorney a copy of a Farm Bureau policy other than the one issued to Eichholz and which contained exclusionary provisions materially different from the correct policy.[2] The trial court found that Farm Bureau's attorney relied on the incorrect policy furnished by the Farm Bureau agent and sent a copy of this policy to plaintiff's attorney, with the result that Farm Bureau was dropped as a party to the lawsuit.
At this point, Eichholz was without defense or coverage in the suit. He was in the Naval service and, therefore, able to apply to the court for an appointment of an attorney ad litem to represent him. The attorney appointed consulted with his client and met with the attorneys for the plaintiff. A consent settlement was negotiated in the personal injury action, which was submitted to the circuit court and judgment entered therein against Eichholz.
After the consent judgment was entered, the difference in the Farm Bureau policy issued to Eichholz and the one submitted by Farm Bureau's agent, McCulloch, to Farm Bureau's attorney, and in turn to Rice's attorney, was revealed for the first time. Also revealed were statements given by Eichholz to Farm Bureau which made apparent the lack of basis for Farm Bureau's decision to deny coverage and defense to Eichholz.
At trial, all of the foregoing matters, as well as the deposition of Evelyn Larsen and of Rice's treating physician, were received in evidence. The trial court also heard the testimony of all parties and of two practicing attorneys who testified with respect to the reasonableness of the consent settlement in the earlier case.
On appeal to this court, appellant contends that the trial court erred in: (1) holding that there was coverage under the insurance policy; (2) finding Farm Bureau was guilty of bad faith; and (3) approving the consent judgment entered in the personal injury action.
Farm Bureau contends that the Pontiac automobile owned by Eichholz's mother-in-law was at the Eichholz residence from January 11, 1977, to the date of the accident, April 29, 1977, and was available for Eichholz's use, within the terms of the policy exclusion. The policy in question provides that Eichholz has liability coverage while driving "any auto" with the following pertinent exclusions:
We do not provide Liability Coverage:
.....
9. For the ownership, maintenance or use of any vehicle, other than your covered auto, which is owned by you or furnished or available for your regular use.
10. For the ownership, maintenance or use of any vehicle, other than your covered auto, which is owned by or furnished or available for the regular use of any family member. However, this exclusion does not apply to you.
The policy defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child."
The trial court found that, in February of 1977, Mrs. Larsen left her vehicle at the Eichholz house and went to Richmond, Virginia, where she remained for some 16 months. At the time Mrs. Larsen left, some months before the accident, the vehicle was inoperable, needing a major tuneup and repairs. The day prior to the accident, Eichholz surrendered his pickup truck to the dealer who sold it to him and received a rebate due to the dealer's inability to furnish a title certificate on the vehicle. On the same day that he returned his own vehicle to the dealer, Eichholz partially repaired the Pontiac so that it became operable, and he was able to drive it to work on the following day, the day of the accident.
*555 The accident occurred after work while Eichholz was on route to purchase additional parts for the car and to buy a current license tag. The trial court found that the vehicle was operated on the highways for the first time on the day of the accident when it was being used because Eichholz was without other transportation. The trial court further held:
The Court ... concludes that the automobile which Eichholz was driving at the time of the accident had not been furnished or available for his regular use; that the automobile being driven by Eichholz at the time of the accident was not owned by any "family member" as that term is defined in the true policy issued to Eichholz and even if it had been so owned by a "family member", such fact would not exclude the automobile from coverage under paragraph 10 of the "Exclusions" portion of Eichholz's policy while the automobile was being operated by the named insured, Wayne Eichholz... .
.....
No reasonably prudent insurance company should have declined coverage and refused to defend under the "automobile owned by a family member" exclusion or under the "automobile furnished to the insured for his regular use" exclusion, or under any other exclusion in the Eichholz policy, under the circumstances involved. From the evidence it appears that the only investigation made by the defendant on the coverage question consisted of two interviews with Eichholz (one by telephone). The two Eichholz statements, taken as a whole, clearly show that the automobile had not been furnished to him for his regular use. These statements, plus the information imparted by Eichholz to defendant's investigator on August 29, 1977 immediately following the completion of the recorded statement of that date also show rather clearly that the owner of the automobile, Mrs. Larson, was not at any time a regular member of the Eichholz household, but had only visited in the Eichholz home from time to time prior to her incarceration in Virginia and had maintained a separate residence prior to leaving for Virginia.
Assuming that bad faith is required for recovery over policy limits in a case such as this where there is a refusal to defend,[3] the trial court's finding of bad faith is supported by the evidence. The duty of a liability insurer to defend its insured is distinct from, and broader than, the duty to indemnify.[4] The policy gives the insurer the right to defend, to control the investigation, handling and settlement of a lawsuit, and its duty to the insured in the exercise of these rights is in the nature of a fiduciary one, requiring exercise of good faith.[5] Thus, while an insurance company *556 is within its rights in making a thorough investigation to determine whether the accident in question comes within the coverage of its policy, the company acts at its peril in refusing to defend its insured and will be held responsible for the consequences. By agreement with the insured, the insurer may undertake to investigate and to defend its insured without compromising its right to contest coverage. The trial court found the insurer obtained execution by the insured of what is referred to as a non-waiver agreement on August 22, 1977, apparently allowing the insurer's investigation of the accident without compromise of its claim of no coverage[6] but did not seek a reservation of rights agreement to allow it to undertake the defense of its insured.
In the instant case, the company's refusal to defend left its insured without the defense contracted and paid for under the policy. The denial of coverage left the insured without a viable basis for receiving or responding to settlement offers within the limits of any insurance policy. The trial court correctly ruled that the result was to subject the insured to the personal judgment subsequently entered. The insurer chose to rely on the representations and recommendations as to coverage of its agent and is held responsible for those actions.
Farm Bureau's third point on appeal is that the trial court erred in approving the consent judgment since the insurer was never given the opportunity to participate in settlement, the judgment was excessive and no good faith defense was made by the attorney ad litem who had formerly been an associate of one of plaintiff's counsel. As noted by the trial court, once a company has denied coverage and refused to defend, the existence of settlement offers is not a prerequisite to the establishment of a cause of action for excess. In American Fidelity Fire Insurance Company v. Johnson, 177 So.2d 679 (Fla. 1st DCA 1965), failure to communicate a settlement offer to the insurer after the insurer's refusal to defend was held no defense to the excess suit. The court stated:
Surely Johnson should not be penalized for failure to do the idle act of notifying American Fidelity of the settlement offer after it had renounced the contract and washed its hands of the whole affair.
.....
Having chosen to step aside, American Fidelity cannot now receive the benefit of any different course it might have pursued had it taken command of the litigation.
Nor can the insurer here be heard to complain of the reasonableness of the consent judgment entered below without the insurer's participation. Here again, its failure to assume its contractual obligations was voluntary and undertaken with full appreciation of the risk involved.
As to the contention that the judgment was brought about through "bad faith, fraud, collusion and without any effort to minimize the amount of said judgment," there was no substantial evidence introduced to support these contentions. The testimony showed, in fact, that the settlement was reasonable under all the circumstances and that there was no collusion. The rule of Taylor v. Safeco Insurance Company, 361 So.2d 743 (Fla. 1st DCA 1978), is inapplicable where, as here, the consent judgment was not fraudulent or collusive.
Finally, the parties agree that the final judgment here contains a typographical error, adding $4,000 to the amount of the judgment in the initial suit. The sum of $4,000 is hereby stricken from the judgment below, and the judgment, as corrected, is AFFIRMED.
ROBERT P. SMITH, Jr., and ERVIN, JJ., concur.
NOTES
[1] 50 U.S.C.App., §§ 501 et seq.
[2] Incorrect policy furnished by Farm Bureau agent contained this exclusion:

(1) to any automobile owned by or furnished for regular use to either the named insured or a member of the same household. Correct Eichholz policy provision is set out infra, at pages 554-555.
[3] Thomas v. Western World Ins. Co., 343 So.2d 1298, 1304 (Fla. 2d DCA 1977), cert. dismissed 348 So.2d 955 (1977).

In the case before us, there is no threshold question of "good faith" vs. "bad faith." For here, the company exercised no faith at all. It simply wrongfully refused to comply with its contract to provide a defense on behalf of its insureds.
.....
The concept of "bad faith" is a viable and useful test for determining damages against an insurance company within the context of settlement negotiations and defense of claims against its insureds. But, employment of the test presupposes the company is attempting to exercise skill, judgment and fidelity on their behalf. Appellee concedes that it did not measure up to this standard.
[4] 1 Long, Liability Insurance, § 5.01 at 5-7 (1974):

The insurer's duty to defend is more extensive than its duty to pay. If the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured.
National Union Fire Insurance v. Lenox Liquors, 358 So.2d 533 (Fla. 1977); Accredited Bond Agencies v. Gulf Insurance, 352 So.2d 1252 (Fla. 1st DCA 1977).
[5] Baxter v. Royal Indemnity Co., 285 So.2d 652, 656 (Fla. 1st DCA 1973); Boston Old Colony v. Cateriz, 386 So.2d 783 (Fla. 1980):

For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to the litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured.
[6] No copy of the non-waiver agreement is of record here.