680 So.2d 1114 (1996)
ALLSTATE INSURANCE COMPANY, Appellant/Petitioner,
v.
AMERICAN SOUTHERN HOME INSURANCE COMPANY, Appellee/Respondent.
No. 95-2724.
District Court of Appeal of Florida, First District.
October 11, 1996.
*1115 Tammy deSoto Cicchetti of Callahan & Cicchetti, P.A., Tallahassee, for Appellant/Petitioner.
Michael D. West and Thomas J. Guilday of Huey, Guilday & Tucker, P.A., Tallahassee, for Appellee/Respondent.
VAN NORTWICK, Judge.
Allstate Insurance Company (Allstate) petitions this court for a writ of certiorari asking this court to quash a discovery order of the lower court, which had granted the motion of American Southern Home Insurance Company (American) to compel production of Allstate's claim and litigation files.[1] American, the primary insurer, had sued Allstate, the excess insurer, seeking contribution to defense costs after it settled a negligence and wrongful death action brought against their common insured. American claims entitlement to discovery of Allstate's complete claim and litigation files on the grounds that Allstate breached its fiduciary duty owed to their common insured, whose shoes American steps into under the theory of equitable subrogation. However, we find that American's complaint fails to allege a cause of action for breach of fiduciary duty. Accordingly, we grant the petition for writ of certiorari, issue the writ, and quash the order compelling discovery.

I.
American was the primary insurer of a mobile home belonging to Ronald and Susan McKaye. American's mobile home policy provided $50,000 in liability coverage for bodily injury or death arising out of the ownership, maintenance or use of the mobile home, which the McKayes leased to Stewart and Teresa Wills. Allstate issued the McKayes a personal umbrella policy providing excess coverage with limits of $1,000,000 for personal injury caused by an occurrence on the property where the mobile home is located. Allstate required the McKayes to maintain underlying primary coverage in the amount of $50,000. The umbrella policy provided that Allstate would assume control of the settlement or defense of any claim or suit against the insured if the limits of any required underlying insurance or any other insurance "have been exhausted by payment."
On November 9, 1992, carbon monoxide leaked from a liquid propane furnace in the mobile home, causing the death of one of the Wills' children and bodily injury to the Wills and their other child. The Wills sued Ronald McKaye, the mobile home manufacturer, the furnace manufacturer, and the local natural gas delivery/service company for negligence and wrongful death.
According to the allegations of American's complaint, the Wills offered to settle their claim against McKaye for $1,050,000, the combined limits of the American and Allstate policies, but refused to settle their claims against McKaye for the $50,000 limits of the American policy alone. McKaye demanded that both insurance companies settle the case. In July 1993, American tendered its policy limits to the Wills. Allstate, however, refused to tender its policy limits or offer any amounts towards settlement. According to American, Allstate insisted that American continue defending McKaye, which American did. In mediation, the parties settled. On behalf of McKaye, American paid the limits *1116 of its insurance policy, or $50,000 and the remaining defendants contributed more than $1,000,000 to secure the settlement. Allstate paid nothing under its policy, and McKaye paid nothing personally to secure the settlement and release.
American then filed its complaint against Allstate, including a count based upon equitable subrogation, the claim at issue in the instant appeal. American alleges that Allstate owed a duty to assume the defense of McKaye beginning on or about July 30, 1993, when it became apparent that McKaye's potential liability exceeded American's $50,000 policy limits and American tendered its policy limits. American alleges further:
19. Allstate failed to tender its policy limits or assume the defense of the McKayes and obligated American Southern Home to continue defending the case solely to protect Allstate's self-interest in avoiding payment. As a result, American Southern Home was compelled to pay defense costs that in equity and good conscience ought to have been paid by Allstate.
20. Allstate's conduct benefitted only Allstate and unjustly enriched Allstate at the sole expense of American Southern Home.
21. American Southern Home is equitably subrogated to the rights of the McKayes against Allstate and is entitled to reimbursement of all defense costs incurred in the suit by the Willses after July 30, 1993.

II.
An excess insurer, like any liability insurer, owes a duty to its insured to defend and to negotiate or settle in good faith. Ranger Ins. Co. v. Travelers Indem. Co., 389 So.2d 272, 275 (Fla. 1st DCA 1980). This duty is fiduciary in nature, requiring the exercise of good faith. Florida Farm Bureau Mut. Ins. Co. v. Rice, 393 So.2d 552, 555 (Fla. 1st DCA 1980), pet. for rev. denied, 399 So.2d 1142 (Fla.1981). It is much broader than the duty to indemnify and requires the excess insurer to act with due regard for the interests of the insured. Id. 393 So.2d at 555 n. 5. This fiduciary obligation is imposed on an insurer because the insured surrenders to the insurer all control over handling a claim, including all decisions with regard to the litigation and settlement. In return, the insurer assumes a duty to exercise control of the claim and to make decisions with due regard for the interests of the insured.
Turning to the discovery order at issue in the instant case, it has generally been held that claims and litigation files constitute work product and are protected from production to opposing parties pursuant to section 90.502, Florida Statutes, and Rule 1.280(b)(3), Florida Rules of Civil Procedure. American States Ins. Co. v. Kransco, 641 So.2d 175 (Fla. 5th DCA 1994); General Acc. Ins. Co. v. American Mut. Ins. Co., 562 So.2d 414 (Fla. 5th DCA 1990); Fla. Min. & Materials Corp. v. Continental Cas. Co., 556 So.2d 518 (Fla. 2d DCA 1990); Utica Mut. Ins. Co. v. Croft, 432 So.2d 196 (Fla. 1st DCA 1983); U.S. Fire Ins. Co. v. Clearwater Oaks Bank, 421 So.2d 783 (Fla. 2d DCA 1982); Agri-Business, Inc. v. Bridges, 397 So.2d 394 (Fla. 1st DCA), rev. denied, 407 So.2d 1102 (Fla. 1981). However, where there exists a fiduciary relationship between the party seeking the materials and the party who has them, the courts will compel their production. Dunn v. National Sec. Fire and Cas. Co., 631 So.2d 1103 (Fla. 5th DCA 1993); Continental Cas. Co. v. Aqua Jet Filter Systems, Inc., 620 So.2d 1141 (Fla. 3d DCA 1993); Aaron v. Allstate Ins. Co., 559 So.2d 275 (Fla. 4th DCA), rev. denied, 569 So.2d 1278 (Fla.1990); Koken v. American Service Mut. Ins. Co., Inc., 330 So.2d 805 (Fla. 3d DCA 1976).
It is Allstate's position that American has not demonstrated the necessary fiduciary relationship which would allow the compelled disclosure of work product or privileged materials. Allstate contends that there is no fiduciary duty between an excess insurer and a primary insurer when each is acting according to the terms of their respective contracts with the insured. Continental Cas. Co. v. United Pacific Ins. Co., 637 So.2d 270 (Fla. 5th DCA), rev. denied, 645 So.2d 451 (Fla.1994); Argonaut Ins. Co. v. Maryland Cas. Co., 372 So.2d 960 (Fla. 3d DCA 1979). Allstate distinguishes cases like Dunn, supra, and Aqua Jet, supra, on the grounds that in those cases, a fiduciary relationship was found to exist between the party seeking the materials and the party who had them. In each of the cases relied upon by American, *1117 an excess judgment had been obtained against an insured person, who was suing his own insurance company for bad faith or who had assigned his own right to sue his insurer to a third party. None of these cases found a fiduciary relationship to exist between two insurers under these same facts.
American responds that it is not basing its claim upon a fiduciary duty between the excess insurer and the primary insurer. Instead, American asserts that the fiduciary duty that underlies the basis for its equitable subrogation claim is a duty that runs from each of the insurers to their mutual insured, not between the insurers. Thus, according to American, the issue is not whether Allstate breached a fiduciary duty owed to American, but whether Allstate breached a fiduciary duty owed to its insured, whose shoes American steps into under the theory of equitable subrogation. See, Ranger Ins. Co. v. Travelers Indem. Company, 389 So.2d 272 (Fla. 1st DCA 1980). American argues that the claim and litigation files sought by it will show that Allstate inequitably shifted its responsibility to American to defend the insured because it believed that, regardless of its exposure and what it might pay, it could force American to defend the insured. American argues this conduct is inherently unfair and does not serve or protect the interests of the insured.

III.
Both parties have agreed that, to determine whether the petition for certiorari should be granted and the order quashed, this court should examine the nature of the cause of action between these two insurance companies to determine whether a fiduciary relationship has been alleged. However, since the trial court has entered an order denying Allstate's motion to dismiss American's complaint for failure to state a cause of action, an order which is a nonappealable nonfinal order not reviewable by certiorari, Bowl America Florida, Inc. v. Schmidt, 386 So.2d 1203 (Fla. 5th DCA 1980), we must first determine whether our certiorari jurisdiction allows us to examine whether the underlying cause of action is based upon a breach of fiduciary duty when the trial court has denied a motion to dismiss for failure to state a cause of action.
In Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987), the Florida Supreme Court held that petitions for writ of certiorari were not appropriate to review orders denying motions to dismiss or strike claims for punitive damages. The court revisited the issue in Globe Newspaper Co. v. King, 658 So.2d 518 (Fla.1995), in light of the procedural requirements of section 768.72, Florida Statutes, which requires a trial court to make an affirmative finding that there is a reasonable evidentiary basis for punitive damages before that claim can go to the jury. In Globe Newspaper, the court held that appellate courts have certiorari jurisdiction to determine if the procedural requirements of the statute are met, however, it ruled that certiorari review is not appropriate to examine the sufficiency of the evidence supporting a lower court's decision to grant or deny leave to amend the complaint to state a cause of action for punitive damages. Id. at 520. The Globe Newspaper opinion left intact the holding in Martin-Johnson that the sufficiency of a punitive damages claim is not reviewable by a petition for writ of certiorari. Id.
Both parties correctly distinguish Martin-Johnson, pointing out that Martin-Johnson did not seek certiorari review of a nonfinal order compelling discovery. The Martin-Johnson court considered whether discovery of a litigant's finances, which generally follows a lower court's denial of a motion to dismiss or strike a punitive damages claim, constituted the type of irreparable harm required for certiorari review. The court determined that it did not. In so ruling, however, the court distinguished material, such as work product, protected by privileges and privacy interests. Martin-Johnson, 509 So.2d at 1100. The court reasoned that discovery of such "cat out of the bag" information as that which is privileged or work product may reasonably cause material injury of an irreparable nature. Id. Thus, we do not read Martin-Johnson as prohibiting an appellate court from determining the validity of the underlying cause of action upon certiorari review of a discovery order, notwithstanding the trial court's denial of a motion to dismiss, when that order grants discovery of materials protected by the attorney-client privilege or work product doctrine.
*1118 In reviewing nonfinal orders compelling production of claim and litigation files, Florida courts have always considered the nature of the claim between the two parties. See, e.g., Superior Ins. Co. v. Holden, 642 So.2d 1139 (Fla. 4th DCA 1994); Dunn v. National Sec. Fire and Cas. Co., 631 So.2d 1103 (Fla. 5th DCA 1993); Continental Cas. Co. v. Aqua Jet Filter Systems, Inc., 620 So.2d 1141 (Fla. 3d DCA 1993). Similarly, it is necessary to examine the issue on which the discovery is sought, the nature of the cause of action involved, and the nature and relationship of the parties, before we can appropriately determine whether the lower court erroneously ordered discovery of litigation and claim files. See e.g., Everglades Protective Syndicate, Inc. v. Makinney, 391 So.2d 262 (Fla. 4th DCA 1980).

IV.
Turning to the cause of action alleged in the instant case and the relationship of the parties, we conclude that American has failed to allege a breach of a fiduciary duty on the part of Allstate which could subject Allstate to discovery of its claim and litigation files. Allstate's fiduciary obligation toward its insured required Allstate to act with due regard for the interests of the insured. Florida Farm Bureau Mut. Ins. Co. v. Rice, 393 So.2d at 555 n. 5. Even accepting American's contention that it, as primary insurer, could step into the shoes of the insured and sue the excess insurer for breach of its good faith duty to settle, there has been no demonstration that the excess insurer here (Allstate) breached its good faith duty to settle or otherwise breached its duty to its insured. Further, in the instant case, American has failed to demonstrate any action on the part of Allstate which negatively impacted the insured, McKaye. In fact, the tort case against McKaye settled within the primary insurance policy limits and McKaye was subjected to no personal liability.[2]
The operative allegations in American's complaint are that Allstate's conduct "benefitted only Allstate and unjustly enriched Allstate at the sole expense of American" and "compelled [American] to pay defense costs that in equity and good conscience ought to have been paid by Allstate." These allegations seek to show that Allstate treated American, not the insured, "unfairly." The complaint contains no allegations of actions by Allstate that were detrimental to its insured.
At the heart of this controversy is American's contention that it is entitled to indemnification from Allstate for the defense costs expended on behalf of their common insured. This duty to indemnify, if indeed it exists under these factual circumstances, is much narrower than the duty imposed where a fiduciary relationship exists, Florida Farm Bureau Mut. Ins. Co. v. Rice, 393 So.2d at 555 n. 5, and does not permit the discovery of the claim and litigation files which were ordered in the instant case.
PETITION GRANTED.
BOOTH and JOANOS, JJ., concur.
NOTES
[1] Simultaneously, the trial court ordered Allstate to provide a complete answer to an interrogatory. Allstate has failed to demonstrate that this portion of the order results in the irremediable injury necessary to merit the exercise of certiorari jurisdiction, and its contentions of error are meritless.
[2] These facts distinguish the instant case from North American Van Lines, Inc. v. Lexington Co., 678 So.2d 1325 (Fla. 4th DCA 1996)(holding that insured was not required to suffer an excess judgment before it could sue its excess insurer and primary insurer for bad faith failure to settle, where it was alleged the insurers arbitrarily refused to settle and insured was required to pay $1 million in settlement to avoid near certainty of larger judgment that would exceed all available coverage).