716 So.2d 340 (1998)
EASTERN AIR LINES, INC., et al., Petitioners,
v.
UNITED STATES AVIATION UNDERWRITERS, INC., et al., Respondents.
No. 98-842.
District Court of Appeal of Florida, Third District.
August 26, 1998.
*341 Greenberg Traurig Hoffman Lipoff Rosen & Quentel and Elliot H. Scherker and Marlene K. Silverman and Brenda K. Supple, Miami, for petitioners.
Akerman, Senterfitt & Eidson and Mark S. Shapiro and Nina Kole Brown, Miami; Haight Gardner Holland & Knight and John M. Toriello; Anania, Bandklayder & Blackwell and Douglas H. Stein, Miami, respondents.
Before JORGENSON, LEVY and GREEN, JJ.
JORGENSON, Judge.
Eastern Air Lines, Inc. and Dade County [collectively referred to as Eastern] seek certiorari review of an order compelling discovery. For the following reasons, we grant the petition and quash the order under review.
This discovery dispute, which centers on assertions of attorney-client privilege, arose in the context of litigation filed in 1992 and 1996 by Eastern against multiple insurance companies.[1] Eastern and Dade County, an additional insured under the policies, sought a declaration of coverage and duties to defend and indemnify for damages established in a settlement between Eastern, Dade County's Department of Environmental Resources Management [DERM], and Dade County Aviation Department. The settlement had been approved by the United States Bankruptcy Court for the Southern District of New York, and concerned Eastern's agreement to undertake remedial measures to clean up fuel spills that had resulted in soil and groundwater contamination at its sites of operation at airports around the country.[2]
Discovery ensued; the insurance companies requested the production of documents and propounded interrogatories and requests for admission relating to the fuel spills that had allegedly occurred between the early 1940s and 1991. Eastern responded with the production of over 12,000 documents. In October, 1996, Eastern filed a "privilege log" that totaled 56 pages and listed 379 documents that Eastern was withholding on the basis of various privileges. Eastern concedes that the initial privilege log inadequately identified precisely what privilege applied to which document. In 1998, Eastern filed a revised privilege log that identified with greater specificity the privileges that applied to the documents that it sought to protect from discovery.
After protracted discovery skirmishes and rancorous communications between the parties, the insurers filed a motion to compel *342 production of all documents relevant to the determination of the underlying claims. The primary basis for the motion to compel production was the "cooperation clause" in the insurance policies, which provided that:
The insured shall cooperate with the insurers and, upon the insurers [sic] request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at the Insured's own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of an occurrence.
The insurers also argued that the revised privilege log was still inadequate under Fla. R. Civ. P. 1.280(b)(5), and that Eastern's bad faith in the discovery process merited the imposition of sanctions. Eastern, although recalcitrant in its provision of discovery materials, had violated no court order relating to discovery matters. The trial court granted the motion to compel and in a twenty-six-page order, effectively stripped Eastern of all claims of attorney-client privilege. The court ruled that: (1) because of the "cooperation clause," Eastern had no expectations of privacy when it communicated with its counsel regarding the underlying pollution claims; (2) Eastern had waived all claims of attorneyclient privilege concerning the extent, timing, and manner of pollution occurrences that it had sued upon, because it had raised those issues by filing the coverage action; (3) Eastern had acted in bad faith and had waived any privileges as to the documents listed in the privilege log because it did not comply with rule 1.280(b)(5); and (4) Eastern had failed to meet its burden of establishing that corporate counsel, who also served its employer in a nonlegal business capacity, had in fact been giving legal advice in documents that Eastern claimed were exempt from discovery because of the attorney-client privilege. In sum, the trial courtexpressly declining to conduct an in camera examination of the documents in questionordered Eastern to provide all materials connected with the environmental pollution claims, and precluded Eastern from shielding any attorneyclient communications from scrutiny by the insurers.
The trial court departed from the essential requirements of law. In ruling that the cooperation clause obliterated any expectations of privacy between Eastern and its attorneys, the trial court relied upon Waste Management, Inc. v. International Surplus Lines Ins. Co., 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322 (1991). In Waste Management, the court held that a cooperation clause barred invocation of the attorney-client privilege in an indemnification action brought by an insured, arising from a lawsuit against the insured for environmental damage caused by the operation of hazardous waste disposal sites. Id. at 328. The Illinois court broadly held that:
[T]he cooperation clause imposes a broad duty of cooperation and is without limitation or qualification. It represents the contractual obligations imposed upon and accepted by insureds at the time they entered into the agreement with insurers. In light of the plain language of the cooperation clause in particular, and language in the policy as a whole, it cannot seriously be contended that insureds would not be required to disclose contents of any communications they had with defense counsel representing them on a claim for which insurers had the ultimate duty to satisfy.... Insureds maintain that the purpose of the cooperation clause was mooted once the underlying lawsuit was terminated. We disagree. Insureds' duty to cooperate concerning matters covered by the insurance agreement did not end with the termination of the underlying lawsuit, but rather continues for as long as insureds seek to enforce its terms, and certainly to the point when insurers were requested to perform their end of the bargain. The fact that the parties are now adverse concerning that interpretation of such terms does not negate insureds' contractual duty.

Id. (emphasis added).
We reject the rule announced by the Illinois *343 Supreme Court in Waste Management.[3] "The extent of the attorney-client privilege is a matter of state law." Briggs v. Salcines, 392 So.2d 263, 266 n. 2 (Fla. 2d DCA 1980). In Florida, the attorney-client privilege is codified in section 90.502, Florida Statutes (1997). Section 90.502(1)(c) provides:
A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:
1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.
2. Those reasonably necessary for the transmission of the communication.
The statute then provides, in section 90.502(4)(a)-(e), five circumstances when there is no attorney-client privilege even as to communications that would otherwise be deemed confidential. None of those five circumstances is present in this case. Confidential communications between a lawyer and client "are not discoverable unless one of the statutory exceptions to the privilege is applicable." Haskell Co. v. Georgia Pacific Corp., 684 So.2d 297, 298 (Fla. 5th DCA 1996) (emphasis added).
Under Florida law, the cooperation clause does not eviscerate the attorney-client privilege. Instead, the cooperation requirement "arises to prevent fraud and collusion in proceedings to determine liability once notice has been given." Bankers Ins. Co. v. Macias, 475 So.2d 1216, 1217 (Fla.1985). The cooperation requirement applies in Florida only when the insured and the insurer are in a fiduciary relationship; the insurer has the duty to operate in good faith, and the insured "has the reciprocal obligation to allow the insurer to control the defense and to cooperate with the insurer." Doe v. Allstate Ins. Co., 653 So.2d 371, 374 (Fla.1995). Where that fiduciary relationship exists, a Florida court may compel production of documents as between the two parties in the relationship. See Allstate Ins. Co. v. American So. Home Ins. Co., 680 So.2d 1114, 1116 (Fla. 1st DCA 1996) ("where there exists a fiduciary relationship between the party seeking the materials and the party who has them, the courts will compel their production."). Where it does not exist and the parties are in an adversarial positionas in an action by an insured against an insurer for bad faiththe attorney-client privilege is not waived. See Kujawa v. Manhattan Nat'l Life Ins. Co., 541 So.2d 1168 (Fla.1989).
In this case, at this point in the litigation, Eastern and its insurers are clearly in the most adversarial of positions. No fiduciary relationship now exists, and the cooperation clause in the insurance policies does not operate to override the clear language of Florida's codification of the attorney-client privilege. We therefore quash that portion of the order that compels production on the basis of the cooperation clause.
The trial court further departed from the essential requirements of law when it ruled that by bringing the coverage suit, Eastern had waived the attorney-client privilege as to all information relating to the extent, timing, and manner of pollution occurrences being sued upon. The mere bringing of an action does not amount to a waiver of the attorney-client privilege. See Home Ins. Co. v. Advance Mach. Co., 443 So.2d 165, 168 (Fla. 1st DCA 1983) ("Consequently, if the mere bringing of a lawsuit waived the privilege, it would have little meaningful existence.").
"Because a plaintiff puts a question `at issue' which would normally be, as in this case, creating a divergence of claims between the parties who would normally be on the same side, does not in itself mean that the plaintiff has to give up, blanket-wise, all of the privileges that have been bestowed upon *344 attorneys by law." Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 412 (D.Del.1992). Accordingly, we also quash that portion of the order on review that compels discovery based upon the trial court's finding that Eastern had waived the attorney-client privilege in its entirety by bringing the coverage action.
The trial court also departed from the essential requirements of law in stripping the attorney-client privilege from all of the documents listed in the revised privilege log. The remedy was inappropriate as a sanction. Although Eastern's pattern of delay and recalcitrance in providing the requested discovery is far from commendable, it is not deserving of so severe a punishment. See Fla. R. Civ. P. 1.380(b)(2); cf. Bush Ranch Inc. v. E.I. DuPont De Nemours & Co. (In re E.I. DuPont De Nemours & CompanyBenlate Litigation), 99 F.3d 363 (11th Cir.1996) (holding that a party's failure to comply with a court order to file a revised privilege log may result in the imposition of sanctions), cert. denied, ___ U.S. ___, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997). Eastern did not violate any court order, although it filed the revised log only one week before the hearing on the motion to compel. However, the insurer had not sought to compel a more specific privilege log until almost one year after the initial log had been filed. In the absence of Eastern's violation of a specific court order, the sanction was inappropriate, and at the very least, it was premature in light of the trial court's refusal to conduct an in camera review of the documents listed in the privilege log.
We quash the remaining bases for the order compelling discovery and direct the trial court to conduct an in camera examination of the documents listed in the revised privilege log.[4] Our disposition of this proceeding is without prejudice for either party to seek review of the trial court's order on the motion to compel once the court has completed its in camera review and ruled on the matter.
Petition granted; order quashed; remanded with directions.
NOTES
[1] The 1996 litigation named dozens of new insurers as parties and asserted a new claim of coverage by Dade County.
[2] The sparse record on appeal in this certiorari proceeding appears to indicate that Eastern did not notify its insurers of the environmental damage claims until it filed the declaratory action.
[3] Among the other jurisdictions that have rejected the Waste Management rule are California, see Rockwell Int'l Corp. v. Superior Court, 26 Cal. App.4th 1255, 32 Cal.Rptr.2d 153 (Cal.App.4th 1994); Delaware, see Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408 (D.Del.1992) (applying state law); Minnesota, see Bituminous Cas. Corp. v. Tonka Corp., 140 F.R.D. 381 (D.Minn.1992) (applying state law), aff'd, 9 F.3d 51 (8th Cir.1993); New Jersey, see In re Environmental Ins. Declaratory Judgment Actions, 259 N.J.Super. 308, 612 A.2d 1338 (1992), cert. denied; Ohio, see Owens-Corning Fiberglas Corp. v. Allstate Ins. Co., 74 Ohio Misc.2d 174, 660 N.E.2d 765 (1993); and Pennsylvania, see Northwood Nursing & Convalescent Home, Inc. v. Continental Ins. Co., 161 F.R.D. 293 (E.D.Pa.1995) (applying state law).
[4] We do not address the issue of the "corporate counsel" ruling, as we believe the documents for which the privilege is asserted are included in the privilege log. Our ruling as to the privilege log disposes of the corporate counsel portion of the order under review.