885 So.2d 905 (2004)
LIBERTY MUTUAL FIRE INSURANCE COMPANY, Petitioner,
v.
Robert S. KAUFMAN, Respondent.
No. 3D03-1506.
District Court of Appeal of Florida, Third District.
September 22, 2004.
Rehearing Denied November 17, 2004.
*907 Billing, Cochran, Heath, Lyles & Mauro and Janis Brustares Keyser, West Palm Beach, for petitioner.
Downs & Associates and David W. Brill; Daniel Stuzin, Miami, for respondent.
Before LEVY, FLETCHER, and RAMIREZ, JJ.
LEVY, Judge.
Liberty Mutual Fire Insurance Company (Liberty Mutual) Petitions for a Writ of Certiorari, seeking to quash an Order of the trial court which requires the production of portions of its claim file. We grant the Petition for Certiorari.
This case arises out of an underlying eviction proceeding brought by Robert S. Kaufman against two of his tenants. The tenants brought a counterclaim alleging negligent and intentional infliction of emotional distress. The eviction proceeding and the counterclaims were bifurcated for trial. During the eviction trial, on January 12, 1990, Kaufman informed Liberty Mutual of the counterclaim litigation. Liberty agreed to defend Kaufman in the counterclaim under a reservation of rights. Specifically, Liberty informed Kaufman that it did not intend to cover the intentional claims in the counterclaim but that it would provide Kaufman a defense of the action and coverage for the unintentional acts. Accordingly, Liberty Mutual retained the services of the law firm of Kubicki Draper to represent Mr. Kaufman.
During the proceedings, the tenants' counsel attempted to settle the matter for the policy limits. On June 25, 1990, the trial judge expressed in open court that the tenants would prevail but the amount of damages was uncertain. At the time, a $25,000.00 settlement offer from the tenants was on the table. Kaufman claims that counsel did not inform him of the pronouncement in open court, but mentioned the incident, by letter, to Liberty Mutual. Ultimately, on July 5, 1990, the trial court found in favor of the tenants on their counterclaim and awarded damages of $310,000.00. Liberty subsequently denied coverage for the compensatory and punitive damages awarded against Kaufman based on an opinion letter from Kubicki, Draper opining that the verdict was based on the intentional conduct.
*908 In 1990, Kaufman filed the instant case against Liberty, seeking a declaratory decree of coverage, statutory coverage, damages for breach of contract, and damages for statutory bad faith. Kaufman also filed a separate malpractice action against Kubicki Draper. In 1995, the trial court granted Liberty's motion for summary judgment as to the declaratory decree of coverage claim and the statutory coverage claim. The breach of contract and bad faith claims, which center on whether Liberty properly conveyed settlement demands to Kaufman and whether Liberty provided an adequate defense to Kaufman, remain.
During discovery, Kaufman requested that Liberty produce its entire claims file from the underlying litigation. Liberty objected to this request on the ground that the file was protected work product and attorney-client privilege. The matter was considered before a general master on two separate occasions. The general master found that each document in the claims file was protected, and recommended that no portion of the claims file should be produced. After Kaufman filed exceptions, the trial court appointed a special master to review the claims file in camera. The special master reviewed the claims file, and issued three reports. Liberty filed exceptions to the reports. The trial court ultimately entered an omnibus order requiring the production of portions of Liberty's claims file. Liberty Mutual petitions this Court for a Writ of Certiorari, challenging portions of the trial court's omnibus Order which order the production of several claims file documents. Specifically, Liberty suggests that because the trial court found that there was "no coverage" under the policy for the judgment against Kaufman, that Kaufman is precluded from compelling production of the claims file. Alternatively, Liberty suggests that the parties did not enjoy a fiduciary relationship but were in adversarial positions within months after Kaufman contacted Liberty.

ATTORNEY CLIENT PRIVILEGE
A liability insurer's relationship with its insured is fiduciary in nature. Doe v. Allstate Ins. Co., 653 So.2d 371, 373-74 (Fla.1995); Eastern Air Lines, Inc. v. U.S. Aviation Underwriters, Inc., 716 So.2d 340, 343 (Fla. 3d DCA 1998); Allstate v. American So. Home Ins. Co., 680 So.2d 1114, 1116 (Fla. 1st DCA 1996). Thus, a liability insurer has a continuing duty to use the degree of care and diligence a person would exercise in the management of his or her own business when it undertakes to defend its insured. Doe v. Allstate, 653 So.2d at 373-74; see also Shuster v. S. Broward Hosp. Dist. Physicians' Prof'l Liab. Ins. Trust, 591 So.2d 174 (Fla.1992); Fla. Farm Bureau Mut. Ins. Co. v. Rice, 393 So.2d 552 (Fla. 1st DCA 1980) review denied, 399 So.2d 1142 (Fla.1981). To this end, when an insurer accepts the defense obligations of its insured, certain interests of the insured and the insurer essentially merge. Such common interests bar, among other things, the attorney-client privilege from attaching to communications among the attorney, the insurer, and the insured. Allstate v. Am. S. Home Ins. Co., 680 So.2d at 1116; Doe v. Allstate, 653 So.2d at 373-74.
Section 90.502, Florida Statutes, which protects attorney client communications, includes several exceptions to the attorney-client privilege. Specific to the instant case, section 90.502(4), provides:
(4) There is no lawyer-client privilege under this section when:
* * *
(c) A communication is relevant to an issue of breach of duty by the lawyer to his client ..., arising from the lawyer-client relationship.

*909 * * *
(e) A communication is relevant to a matter of common interest between two or more clients, ... if the communication was made by any of them to a lawyer retained or consulted in common when offered in a civil action between the clients....
§ 90.502(4)(c) & (e), Fla. Stat. (2003). In the instant case, two claims remain against Liberty; Kaufman's bad faith and breach of contract claims. Kaufman's claims arise out of the allegation that Liberty failed to convey settlement demands and that Liberty failed to provide an adequate defense of the intentional claims raised against Kaufman. Thus, Kaufman seeks discovery of information relating to communications directly concerning his, and Liberty's, interest.
Liberty's reliance on Kujawa v. Manhattan Nat'l Life Ins. Co., 541 So.2d 1168 (Fla.1989) is misplaced. The Supreme Court in Kujawa specifically held that the bad faith cause of action did not abolish the attorney-client privilege or the work product immunity. However, the Court in Kujawa found that "an adversarial, not a fiduciary, relationship existed between the parties [,]" affording the insurance company protection against disclosure of its files created after the claim was made by the insured's beneficiary. Kujawa, 541 So.2d at 1169.
In Kujawa, Manhattan National ("the insurer") issued a life insurance policy on John Kujawa's life which named Penelope Kujawa as the beneficiary. John was killed in an airline crash, and the insurer initially declined to pay on the policy. Penelope sued on the policy and for bad faith processing of the claim. The insurer subsequently paid on the policy. Kujawa, 541 So.2d at 1169. During the pending suit, Penelope served the insurer with a request to produce all files pertaining to the handling of the claim. The District Court concluded, and the Supreme Court affirmed, that no fiduciary relationship existed between the parties because the relationship was adversarial at its inception. Id.
By contrast, in the instant case, a fiduciary relationship existed between the parties whereby the parties shared common interests during the underlying proceedings. Liberty argues that the parties' relationship became adversarial in February of 1990, after Liberty advised Kaufman that the policy did not provide coverage or indemnify him for intentional acts. While it is true that Liberty forwarded a letter to Kaufman, that letter was in line with Liberty's fiduciary duty to advise its insured of his rights and limitations under the policy. In the instant case, much like Florida Sheriff's Self-Insurance Fund v. Escambia County, 585 So.2d 461, 463 (Fla. 1st DCA 1991), "[t]he relationship between [the parties] evolved from fiduciary to adversarial, or a combination of the two, with no clear line of demarcation separating them."
Accordingly, in light of the fiduciary relationship during the trial, and Kaufman's allegations against Liberty, any correspondence or communications between Liberty and Kubicki Draper concerning Kaufman and his case are not privileged and must be produced by Liberty. Fla. Sheriff's Self-Insurance Fund v. Escambia County, 585 So.2d 461 (Fla. 1st DCA 1991). However, any communications between Liberty employees or agents and Liberty's in-house counsel are protected as attorney/client communications. See Progressive Am. Ins. Co. v. Lanier, 800 So.2d 689, 691 (Fla. 1st DCA 2001).

WORK PRODUCT
Florida also protects from discovery the work-product of a party, or documents *910 prepared in anticipation of litigation. Fla. R. Civ. P. 1.280. Generally, an insurer's claims and litigation files constitute work product and are protected from production. Fla. R. Civ. P. 1.280(b)(3) However, where there exists a fiduciary relationship between the parties, courts may compel production. Continental Cas. Co. v. Aqua Jet Filter Systems, Inc., 620 So.2d 1141 (Fla. 3d DCA 1993); see also Allstate v. Am. So. Home Ins., 680 So.2d at 1116.
Under the work-product doctrine, documents prepared by or on behalf of a party in anticipation of litigation are not discoverable. Fla. R. Civ. P. 1.280(b)(3). Moreover, the party objecting to the discovery of the information or document maintains the burden to show that the materials were compiled in response to some event which foreseeably could be made the basis of a claim against the insurer. Fireman's Fund Ins. Co. v. Signorelli, 681 So.2d 720, 721 (Fla. 2d DCA 1996). In the insurance context, a document may be deemed to have been prepared in anticipation of coverage litigation if it was created after the insured tendered its claim for coverage; if it begins to appear that the insurer might deny coverage or reserve its rights; the insurer denies coverage; if coverage litigation appears imminent; or if coverage litigation commenced. Nevertheless, work-product may be discoverable if the party seeking discovery is able to show "substantial need" and the absence of the ability to obtain the substantial equivalent by other means. In Springer v. United Services Automobile Association, the Fifth District found that communications between an insured and his counsel that pertained to the defense of a claim of common interest to the insured and insurer are subject to discovery, even if their interests later became adverse. "[However,] ... communications concerning matters not pertaining to the defense or resolution of the liability case may be privileged." Springer, 846 So.2d 1234, 1235 (Fla. 5th DCA 2003).
Liberty raised the work-product privilege with respect to several documents. Although the parties maintained a fiduciary relationship during the proceedings, it is clear that portions of the alleged acts against Kaufman were not covered by the Liberty policy. To this end, many of the documents in the claims file, including some trial notes of the underlying proceedings are protected from discovery. However, any notes, observations, or evaluations by representatives of Liberty concerning the legal work or performance by Kubicki Draper while representing Kaufman must be produced.
Accordingly, we grant the Petition for Writ of Certiorari and remand this matter with instructions that the trial court conduct an in camera review of the documents in dispute and compel production of documents consistent with this opinion.
Petition Granted.