# Third District Court of Appeal

## State of Florida

Opinion filed December 13, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D17-1457, 3D17-1500 & 3D17-1527
Lower Tribunal No. 15-15825

_____

**United Services Automobile Association, et al.,**
Petitioners,

vs.

**Law Offices of Herssein and Herssein, P.A., etc., et al.,**
Respondents.


3D17-1457 & 3D17-1500: Writs of Certiorari to the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

3D17-1527: An Appeal from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.


Shutts & Bowen LLP, and Suzanne Y. Labrit (Tampa), Frank A. Zacherl and Patrick G. Brugger; Law Offices of Charles M-P George, and Charles M-P George; Wadsworth Law, LLP, and Christopher W. Wadsworth and Katya H. Rehders, for petitioners.

Herssein Law Group, and Reuven Herssein; Beighley, Myrick, Udell & Lynne, P.A., and Maury L. Udell, for respondents.

Before SUAREZ, LAGOA and SCALES, JJ.

SCALES, J.

United Services Automobile Association ("USAA"), the defendant/counter-plaintiff below, and non-party the Wadsworth Huott, LLP law firm ("Wadsworth"), each filed a certiorari petition with this Court seeking to quash trial court discovery orders compelling petitioners to disclose information protected by Florida's attorney-client privilege. We consolidated the petitions, and grant them both because, under the unique facts of this case, the implied waiver of the privilege asserted by respondent, Law Offices of Herssein & Herssein, P.A. ("Herssein"), is inapplicable.

## FACTS AND RELEVANT BACKGROUND

In July 2008, USAA entered into a legal services contract with Herssein whereby Herssein agreed to defend USAA, USAA's affiliates and USAA's insureds. As relevant here, Herssein agreed to defend liability claims made against homeowners insured by USAA.[1]

In 2011, a claimant sustained personal injuries when the claimant fell after an encounter with dogs owned by Colleen Brennan, a USAA insured. The claimant made a pre-suit demand for the $100,000 policy limit of Brennan's insurance policy. USAA accepted the demand and tendered its check for the

[1] While not relevant to the issues before us, we note that the agreement between USAA and Herssein is memorialized by several documents, various extensions, amendments, et cetera.

2

policy limits. Rather than cashing USAA's settlement check, the claimant, in March 2013, filed a personal injury action against Brennan and others in the Palm Beach County Circuit Court ("Claimant's Case"). Pursuant to the 2008 legal services contract, USAA appointed Herssein to defend Brennan in Claimant's Case.

Herssein did not seek to enforce USAA's settlement agreement with the claimant; instead, in May 2013, Herssein withdrew the pre-suit policy limit tender. During the course of the ensuing litigation, in October 2013, the claimant served Brennan with a proposal for settlement, again offering to settle the claimant's claim for Brennan's policy limits. Following Herssein's advice, Brennan rejected the claimant's renewed policy-limit demand, and served the claimant with a $65,000 counter-proposal for settlement, which the claimant rejected.

In August 2014, the trial court in Claimant's Case entered a partial summary judgment for the claimant, finding Brennan was strictly liable for the claimant's personal injuries. Sometime later, Brennan hired a separate lawyer, Stephen Maher, who, on February 23, 2015, advised USAA in a letter that Brennan would pursue a bad faith action against USAA, and a malpractice action against Herssein, if Brennan was exposed to a judgment in Claimant's Case in excess of Brennan's $100,000 policy limits. Noting the ensuing conflict of interest created by Mr.

3

Maher's February 23, 2015 letter, Herssein immediately withdrew as Brennan's counsel in Claimant's Case.

USAA then appointed Wadsworth to succeed Herssein in representing Brennan in Claimant's Case, which went to mediation on May 19, 2015. At the mediation, USAA was represented by David Lichter, one of USAA's in-house lawyers, and outside bad faith counsel, Frank Zacherl. Wadsworth and Brennan's own private counsel, Fred Cunningham, also attended the mediation conference on behalf of Brennan. Claimant's Case was settled at this mediation for an amount in excess of USAA's policy limits.[2] Claimant's Case was dismissed on June 30, 2015.

Shortly after the mediation, settlement and dismissal of Claimant's Case, on July 1, 2015, USAA purported to terminate its legal services agreement with Herssein, and, two weeks later, on July 13, 2015, Herssein brought the instant lawsuit against USAA in the Miami-Dade Circuit Court. Herssein generally alleges that USAA violated its legal services agreement with Herssein by, inter alia, failing to appoint Herssein to a sufficient number of PIP defense cases. Herssein's lawsuit seeks in excess of $20,000,000 in damages.

---

[2] The settlement amount is confidential.

In February 2017, USAA filed a counterclaim against Herssein alleging, in one of the counterclaim's five counts, that USAA suffered damages as a result of Herssein's allegedly negligent handling of Claimant's Case. On March 7, 2017, Herssein propounded interrogatories on USAA regarding USAA's malpractice claim involving Claimant's Case, including the following interrogatory relevant here:

> **INTERROGATORY NO. 15.** Whose advice did USAA take to settle [Claimaint's Case] and pay over the insured's policy limits, if that is what occurred?

USAA objected to this interrogatory based on the attorney-client privilege, and Herssein moved to compel USAA to answer the interrogatory. The trial court held a hearing on Herssein's motion on May 23, 2017, and entered an order compelling USAA to answer the interrogatory.

On March 27, 2017, Herssein served Wadsworth with a non-party subpoena seeking information related to Wadsworth's representation of Brennan in Claimant's Case. The subpoena sought the following documents:

1. Any and all correspondence, emails, notes, documents, or electronic version of any correspondence, emails, notes, letters, documents by or between any person including you or your firm and any person or party involved [in Claimant's Case], including USAA, of *any kind*.

2. Any emails, notes, letters, documents or electronic version of any correspondence, emails, notes, letters, document[s] regarding Herssein Law Group or Reuven Herssein from January 2015 to date.

Wadsworth objected to the subpoena based on the attorney-client privilege and, on May 30, 2017, the trial court entered an order requiring Wadsworth to produce the documents to the court for an in camera inspection.[3, 4]

USAA seeks certiorari review of the trial court's May 23, 2017 order, and Wadsworth seeks certiorari review of the trial court's May 30, 2017 order. We consolidated the two petitions and grant same.

## STANDARD OF REVIEW

"Certiorari review extends to discovery orders which depart from the essential requirements of law, cause material injury to a petitioner throughout the remainder of the proceedings, and effectively leave no adequate remedy on appeal." Coyne v. Schwartz, Gold, Cohen, Zakarin & Kotler, P.A., 715 So. 2d 1021, 1022 (Fla. 4th DCA 1998). "Orders compelling production of matters claimed to be protected by the attorney-client privilege . . . present the required potential for irreparable harm." Id.

## ANALYSIS

*1. Florida's Attorney-Client Privilege and the "Malpractice Exception"*

---

[3] The hearing transcripts reflect that the trial court had already determined that the requested communications were not privileged, but ordered the in camera inspection to prevent the disclosure of irrelevant material.

[4] The trial court's order expressly states that Wadsworth is not required to produce any communications between Wadsworth and Brennan.

6

Florida's attorney-client privilege is codified in section 90.502(2) of the Florida Statutes (2017), which provides that "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." A "communication" between a lawyer and a client is "confidential" if the communication is not intended to be disclosed to third persons. See § 90.502(1)(c), Fla. Stat. (2017).

The "malpractice exception" to the privilege is codified in section 90.502(4)(c), which provides that "[t]here is no lawyer-client privilege . . . when . . . [a] communication is relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer, arising from the lawyer-client relationship."

## 2. USAA's Petition – Case Number 3D17-1457

At first blush, it may seem that Herssein's interrogatory seeks only the identity of a USAA lawyer, rather than any confidential communication between USAA and its lawyer. Generally, such identity information is not protected by the attorney-client privilege. See Coffey-Garcia v. S. Miami Hosp., Inc., 194 So. 3d 533, 537-38 (Fla. 3d DCA 2016) (recognizing that because the lawyer-client privilege set forth in section 90.502 "protects only communications to and from a lawyer," the plaintiff in a malpractice action could be compelled to answer

7

deposition questions regarding "the names of the attorneys whom she consulted with" in pursuing her claim). After all, who attended the mediation conference in Claimant's Case on behalf of USAA is certainly no secret to the parties; and, that USAA settled Claimant's Case is no secret either. But, the wording of the interrogatory seeks the identity of the lawyer *who advised USAA to settle the case at the mediation*. There is no practical difference, then, between this interrogatory question and asking USAA to divulge the content of the legal advice each attorney attending the mediation provided to USAA. Plainly, then, the subject interrogatory seeks confidential communications between USAA and its lawyers and is protected by the attorney-client privilege. See id. at 538-39 (finding that while the plaintiff could be compelled to reveal "the names of the attorneys whom she consulted with" in pursuing a medical malpractice claim, "the reasons why she sought out legal counsel and any subsequent counsel" was protected by the attorney-client privilege).

The trial court concluded, however, that the "malpractice exception" to the privilege applies to the subject communications and ordered USAA to answer the interrogatory. We find the trial court erred for the following reasons. The trial court determined that Herssein was entitled to know who advised USAA to settle Claimant's Case for an amount in excess of policy limits at mediation – if that was, in fact, what happened – as USAA claimed that Herssein committed malpractice

8

by advising Brennan against settling Claimant's Case for policy limits. The trial court explained: "I can't see how [Herssein can] defend the malpractice case without this information."

Nevertheless, while the contents of the confidential communications between USAA and its mediation counsel may have some relevancy regarding whether Herssein's settlement advice breached a legal duty owed to USAA and its insured[5], we are persuaded by our sister court's rationale that the "malpractice exception" applies only to communications between the client and the lawyer being sued. See Coyne, 715 So. 2d at 1022-23. Just as the Fourth District did in Coyne, we decline to extend the "malpractice exception" to compel a lawyer's former client to disclose confidential communications with that client's other lawyers simply because such information may be relevant to the former lawyer's defense of the client's malpractice case against the lawyer. Id. at 1023; see also Coates v. Akerman, Senterfitt & Eidson, P.A., 940 So. 2d 504, 509 (Fla. 2d DCA 2006) (citing Coyne, stating "[t]he possibility that the disputed documents may be relevant to or may assist the lawyers in their defense or in their third-party claims, or may perhaps assist in the lawyer's efforts to impeach the clients, does not create a waiver of the privilege").

---

[5] Because we find the "malpractice exception" inapplicable in this case, we express no opinion on the relevancy of such communications.

9

We, therefore, grant USAA's petition, and quash the trial court's May 23, 2017 order requiring USAA to answer interrogatory 15.

3. *Wadsworth's Petition – Case Number 3D17-1500*[6]

As mentioned above, USAA appointed Wadsworth to represent Brennan when Herssein withdrew from representing Brennan in Claimant's Case. After USAA sued Herssein for Herssein's alleged malpractice in representing Brennan, Herssein served Wadsworth with a non-party subpoena seeking communications regarding Wadsworth's representation of Brennan in Claimant's Case. Again, relying on the "malpractice exception," the trial court overruled Wadsworth's objections and compelled Wadsworth to produce the documents – except for any

_____

[6] Because Wadsworth is a non-party to the lawsuit between USAA and Herssein, the trial court's May 30, 2017 order compelling Wadsworth to respond to Herssein's non-party subpoena is, indeed, a final order as to Wadsworth. See Fla. House of Representatives v. Expedia, Inc., 85 So. 3d 517, 520 (Fla. 1st DCA 2012) (finding that an order compelling discovery by third parties was final because it "adjudicates the legal rights of nonparties and because it otherwise meets the general test of finality"). Hence, in addition to filing the instant petition for writ of certiorari, Wadsworth also filed an appeal of the trial court's order. We assigned case number 3D17-1527 to this appeal. See Fla. R. App. P. 9.030(b)(1)(A); Office of the Public Defender v. Lakicevic, 215 So. 3d 112 (Fla. 3d DCA 2017) (treating an order denying the public defender's motion for a protective order from a third-party subpoena duces tecum for deposition as a final order reviewable on appeal, rather than via a petition for writ of certiorari). We consolidated Wadsworth's appeal with the two petitions, and, because we are quashing the subject order, we dismiss, as moot, Wadsworth's appeal in case number 3D17-1527. We need not, and therefore do not, reach the perplexing issue of whether it is a better practice for a non-party to seek appellate, rather than certiorari, review of a final discovery order.

communications between Wadsworth and Brennan – for an in camera inspection by the trial court.

As we did with USAA's petition, we find here that the "malpractice exception" is applicable only to communications between the client and the lawyer being sued for malpractice. See Coyne, 715 So. 2d at 1022-23. The "malpractice exception," therefore, is inapplicable to communications between USAA and Wadsworth.

Interestingly, though, Herssein suggests that Wadsworth and USAA did not have an attorney-client relationship. Herssein argues that Wadsworth's actual client in Claimant's Case was not USAA, but rather, only Brennan. Herssein additionally argues that once Brennan's private counsel, Mr. Maher, notified USAA of Brennan's intention to sue USAA for bad faith on February 23, 2015, USAA and Brennan's interests were no longer aligned so that any imputed attorney-client relationship between USAA and Wadsworth was destroyed. Therefore, Herssein argues, any communications between Wadsworth and USAA are not protected by the attorney-client privilege.

These arguments are unpersuasive. While the insured is the attorney's client when an attorney is hired by an insurance company to represent an insured in a liability case,[7] it is well settled that communications between an insurer and the

---

[7] see Marlin v. State Farm Auto. Ins. Co., 761 So. 2d 380, 381(Fla. 4th DCA 2000) (holding that where the insurer retains an attorney to represent the insured pursuant

11

lawyer hired by the insurer to protect the insured's interests are protected by the attorney-client privilege because the insurer and insured share a common interest in the outcome of the case. See Liberty Mut. Fire Ins. Co. v. Kaufman, 885 So. 2d 905, 908 (Fla. 3d DCA 2004) ("[W]hen an insurer accepts the defense obligations of its insured, certain interests of the insured and the insurer essentially merge."). Similarly, an insurer's fiduciary obligation to its insured, and the common interests of the insured and insurer, continue even after the insured notifies the insurer of a potential bad faith claim. See id. at 908, 909 (stating that "a liability insurer has a continuing duty to use the degree of care and diligence a person would exercise in the management of his or own business when it undertakes to defend it insured," finding that where "'[t]he relationship between [the parties] evolved from fiduciary to adversarial, or a combination of the two, with no clear line of demarcation separating them,'" that the attorney-client privilege still applied (quoting Fla. Sheriff's Self-Insurance Fund v. Escambia Cty., 585 So. 2d 461, 463 (Fla. 1st DCA 1991))); Cone v. Culverhouse, 687 So. 2d 888, 893 (Fla. 2d DCA 1997) (recognizing "that 'common interest' can exist, even if some conflict is present or stands between the clients").

Indeed, notwithstanding Mr. Maher's February 23, 2105 bad faith letter to USAA, at all times relevant, the interests of both USAA and Brennan were

to an insurance policy, the attorney "acts in the capacity of an independent contractor" for the insured)

12

common and aligned in defending against Claimant's Case. Thus, the confidential communications between USAA and Wadsworth remain protected by the attorney-client privilege from discovery by Herssein. See Progressive Express Ins. Co. v. Scoma, 975 So. 2d 461, 467 (Fla. 2d DCA 2007) ("[T]he confidential communications between the insured, the insurer, and any counsel representing them regarding the matter of common interest are protected by the attorney-client privilege from discovery by third parties.").

We, therefore, grant Wadsworth's petition, and quash the trial court's May 30, 2017 order.

## CONCLUSION

In sum, USAA's communications with both of its own lawyers, and with Wadsworth, the lawyer USAA hired to represent Brennan, are protected by the attorney-client privilege, and, given this case's unique situation, the "malpractice exception" is inapplicable to those communications.

We grant both petitions, quash the challenged orders, and dismiss as moot, Wadsworth's appeal.

13