# Third District Court of Appeal

## State of Florida

Opinion filed June 22, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1966
Lower Tribunal No. 13-37232
_____


**Michelle Coffey-Garcia, et al.,**
Petitioners,

vs.

**South Miami Hospital, Inc., et al.,**
Respondents.


A Writ of Certiorari to the Circuit Court for Miami-Dade County, Lisa S. Walsh, Judge.

Diez-Arguelles & Tejedor, and Carlos Diez-Arguelles and Maria Tejedor (Orlando); Barbara Green, for petitioners.

Spector Rubin, P.A., and Andrew Spector and Robert M. Borak; Falk, Waas, Hernandez, Cortina, Solomon & Bonner, P.A., and Glenn Falk, Scott E. Solomon and Jordan M. Bieber; Haliczer, Pettis & Schwamm, P.A., and Debra Potter Klauber, for respondents.


Before EMAS, LOGUE, and SCALES, JJ.

LOGUE, J.

Michelle Coffey-Garcia and Jose M. Garcia, individually and on behalf of their daughter, Samantha Garcia (hereinafter, "the Garcias"), petition for a writ of certiorari to review an order that compels Ms. Coffey-Garcia to answer deposition questions regarding lawyers she consulted relating to the medical malpractice claim at issue. We grant the writ and quash part of the order under review.

## FACTS AND PROCEDURAL HISTORY

On July 16, 2005, Ms. Coffey-Garcia gave birth to her daughter, Samantha. In early 2007, a neurologist diagnosed Samantha with cerebral palsy. Prior to Samantha's eighth birthday, on April 30, 2013, the Garcias petitioned to extend by ninety days the statute of limitations for filing a medical malpractice action against the hospitals, clinics, and doctors involved in Samantha's birth. See § 766.104(2), Fla. Stat. (2013). After filing their notice of intent to initiate litigation for medical malpractice, see § 766.106(2), Florida Statutes (2013), the Garcias filed suit against those hospitals, clinics, and doctors in November 2013.

The statute of limitations for medical malpractice is two years "from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence." § 95.11(4)(b), Fla. Stat. (2013). The Florida Supreme Court has interpreted this language "to mean not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by

medical malpractice." Tanner v. Hartog, 618 So. 2d 177, 181 (Fla. 1993) (footnote omitted).

To investigate when Ms. Coffey-Garcia first comprehended a reasonable possibility that her child's injury was caused by malpractice, the lawyers for the hospitals, clinics, and doctors deposed her seeking to discover what lawyers she consulted regarding Samantha's condition, when she consulted them, and why she consulted them. After testifying that her current counsel was not the first attorney she consulted, she declined to answer any other questions based on the attorney-client privilege.

The hospitals, clinics, and doctors moved to compel. The trial court ordered Ms. Coffey-Garcia to "answer all questions related to the following issues": (a) "when she first sought legal counsel"; (b) "the names of the attorneys whom she consulted with"; and (c) "the reasons why she first sought out legal counsel and any subsequent counsel." This petition followed. At oral argument, the hospitals, clinics, and doctors conceded that any information produced should be limited to consultations regarding possible legal remedies stemming from the daughter's condition.

## ANALYSIS

### I. Jurisdiction.

3

For a writ of certiorari to issue, the petitioner must demonstrate that the challenged non-final order (1) departs from the essential requirements of law, (2) results in material injury for the remainder of the case, and (3) such injury is incapable of correction on post-judgment appeal. Citizens Prop. Ins. Corp. v. San Perdido Ass'n, Inc., 104 So. 3d 344, 351 (Fla. 2012). The last two elements are referred to as irreparable harm, the establishment of which is a condition precedent to invoking certiorari jurisdiction. Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 721 (Fla. 2012); Sea Coast Fire, Inc. v. Triangle Fire, Inc., 170 So. 3d 804, 807 (Fla. 3d DCA 2014). The disclosure of information protected by the attorney-client privilege is well recognized as irreparable harm. See Bd. of Trs. of Internal Improvement Trust Fund v. Am. Educ. Enters., LLC, 99 So. 3d 450, 457 (Fla. 2012).

## II.    Attorney-Client Privilege

In Florida, a client's right to have his or her communications with counsel remain confidential derives from two sources which establish somewhat different standards. The right as it pertains to disclosure in judicial and administrative hearings, technically referred to as the "attorney-client privilege," is governed by the Florida Evidence Code, codified at section 90.502, Florida Statutes (2013). The right as it pertains to disclosure outside judicial and administrative hearings, technically referred to as "the rule of client-lawyer confidentiality," is governed by

4

Rule Regulating the Florida Bar 4-1.6. See R. Regulating Fla. Bar 4-1.6 cmt. ("The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer though compulsion of law."). Because we are addressing disclosure in the context of a lawsuit, this case is obviously governed by the attorney-client privilege provided in the Evidence Code.[1]

Under the Evidence Code, "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." § 90.502(2), Fla. Stat. The Code further provides:

---

[1] The distinction between the Ethics Code and Evidence Code is significant because Florida courts have interpreted the Ethics Code's rule of client-lawyer confidentiality to be broader in scope than the Evidence Code's attorney-client privilege. See Campbell v. Am. Pioneer Sav. Bank, 565 So. 2d 417, 417 (Fla. 4th DCA 1990) ("[T]he Ethics Code's protection of a client's confidences is broader than the evidentiary attorney-client privilege protecting privileged communications."); Buntrock v. Buntrock, 419 So. 2d 402, 403 (Fla. 4th DCA 1982) ("The Code of Professional Responsibility protects more than confidential communications, it protects confidences and secrets of a client. This protection is broader than the evidentiary attorney-client privilege, and applies even though the same information is discoverable from other sources.") (internal citations omitted); see also Abdool v. Bondi, 141 So. 3d 529, 553 (Fla. 2014) ("[Rule 4-1.6] has been interpreted to protect the confidences and secrets of clients.").

A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:

1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.

2. Those reasonably necessary for the transmission of the communication.

§ 90.502(1)(c), Fla. Stat.[2]

The privilege protects only communications to and from a lawyer; it does not protect facts known by the client independent of any communication with the lawyer, even if the client later tells the fact to the lawyer: "the communication between the attorney and client is privileged, but the underlying facts are discoverable." S. Bell Tel. & Tel. Co. v. Deason, 632 So. 2d 1377, 1387 (Fla. 1994); see also Carnival Corp. v. Romero, 710 So. 2d 690, 694 (Fla. 5th DCA 1998) ("Although the communications between an attorney and client are privileged, the underlying facts are discoverable."). In other words, "[t]he client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." Upjohn Co. v. U.S., 449 U.S. 383, 396 (1981).

_____

[2] Section 90.502(4) provides several exceptions to the attorney-client privilege, none of which apply here.

6

The burden of establishing the existence of the attorney-client privilege, and thus the existence of a confidential communication, rests on the party asserting the privilege. Deason, 632 So. 2d at 1383. This burden can be met by describing "the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged[,] . . . will enable other parties to assess the applicability of the privilege." Fla. R. Civ. P. 1.280(b)(6). In some cases, however, the communication will appear to be privileged on its face. First Union Nat'l. Bank v. Turney, 824 So. 2d 172, 183 (Fla. 1st DCA 2001); Shell Oil Co. v. Par Four P'ship, 638 So. 2d 1050 (Fla. 5th DCA 1994). In such cases, the party seeking disclosure of the communication bears the burden of proving that it is not privileged. Turney, 824 So. 2d at 183-84; Shell Oil Co., 638 So. 2d 1050.

## III.    Application of Law to the Discovery Order

Applying this law to the instant case, we decline to quash the first two parts of the order under review. Based on the concession of the hospital, clinics, and doctors, the order to divulge the names of attorneys and dates of consultation is limited to those attorneys Ms. Coffey-Garcia consulted regarding possible legal remedies stemming from her daughter's condition. On their face, these questions do not require her to disclose any communication she had with any attorney. They merely require her to disclose the occurrence of a consultation with a lawyer regarding a general topic.

7

This court has previously held that "[t]he traditional and still generally applicable rule denies the [attorney-client] privilege for the fact of consultation or employment . . . ." <u>Greenberg Traurig Hoffman Lipoff Rosen & Quentel v. Bolton</u>, 706 So. 2d 97, 98 (Fla. 3d DCA 1998) (quotations and citations omitted); <u>see also</u> <u>Burt v. Gov't Emps. Ins. Co.</u>, 603 So. 2d 125 (Fla. 2d DCA 1992) (holding, in a personal injury case, that a question asking a plaintiff when she obtained counsel for the case did not violate the attorney-client privilege). There are, of course, exceptions to this general rule in which the very fact of a consultation with an attorney constitutes a "confidential" communication under the Evidence Code. But those exceptions do not apply here.[3]

We therefore conclude that requiring Ms. Coffey-Garcia to reveal when and with whom she consulted for the general purpose of discussing possible legal remedies stemming from her daughter's condition does not, on this record, implicate the attorney-client privilege. This is true even though she is revealing in general terms her purpose for scheduling and attending the consultation. "Courts have consistently held that the general subject matters of clients' representations are not privileged. Nor does the general purpose of a client's representation

---

[3] One example of an exception to this general rule is the "last-link" exception. <u>See</u> <u>Del Carmen Calzon v. Capital Bank</u>, 689 So. 2d 279, 281 (Fla. 3d DCA 1995) ("[T]he attorney-client privilege covers information that would supply links of incriminating evidence in an existing chain of inculpatory events, or lead to the filing of criminal charges."). No "last-link" concerns are implicated here.

8

necessarily divulge a confidential professional communication, and therefore that data is not generally privileged." United States v. Legal Servs. for New York City, 249 F.3d 1077, 1081 (D.C. Cir. 2001)) (internal citation omitted); see also In re Grand Jury Subpoena, 204 F.3d 516, 520 (4th Cir. 2000) ("[T]he general purpose of the work performed [is] usually not protected from disclosure by the attorney-client privilege because such information ordinarily reveals no confidential professional communications between attorney and client.") (quotations and citations omitted); New Jersey v. Sprint Corp., 258 F.R.D. 421, 426 (D. Kan. 2009) ("Revealing the general topic of discussion between an attorney and client does not waive the privilege, unless the revelation also reveals the substance of a protected communication."). We thus decline to quash the first two parts of the order, as modified by the concession at oral argument.[4]

The third part of the trial court's directive, however, requires Ms. Coffey-Garcia to "answer all questions related to . . . the reasons why she first sought out legal counsel and any subsequent counsel." (emphasis added). This part of the order allows inquiry into confidential communications between Ms. Coffey-Garcia and attorneys. For example, she might be asked "after consulting the first lawyer, why did you seek out a second lawyer?" Under the trial court's order that she answer "all" questions, she would be required to answer even if her response was

---

[4] We do not address whether this information is discoverable from attorneys.

9

"my first lawyer insisted I had no case so I wanted to get a second opinion" or "my first lawyer told me I had an excellent case but needed a lawyer specializing in neonatology." These communications of legal advice from the lawyer to Ms. Coffey-Garcia would be protected by the attorney-client privilege. Yet the order as drafted would require her to divulge these privileged communications. While Ms. Coffey-Garcia can be required to answer factual questions about what she learned at various points in time concerning the nature and potential causes of her daughter's condition from sources other than the attorneys that she consulted, she cannot be forced to answer questions that would require her to reveal the contents of advice or information she received from the attorneys.

It is of no account that the answers to such questions might prove useful or even necessary to determine when the Garcias discovered or should have discovered that there was a "reasonable possibility" that medical malpractice caused Samantha's cerebral palsy. The hospital, clinics, and doctors' need for this information to prove their statute of limitations defense does not justify an invasion of the privilege. "[T]he attorney-client privilege . . . is not concerned with the litigation needs of the opposing party." <u>Genovese v. Provident Life & Accident Ins. Co.</u>, 74 So. 3d 1064, 1068 (Fla. 2011). "[U]ndue hardship is not an exception, nor is disclosure permitted because the opposing party claims that the privileged information is necessary to prove their case." <u>Id.</u> (quotation and citation omitted).

## CONCLUSION

For these reasons, we grant the petition and quash the order to the extent it requires Ms. Coffey-Garcia to answer all questions related to the reasons why she sought subsequent counsel.[5]

Petition granted in part; denied in part.

---

[5] Because the issue is not before us, we do not address whether the dates and names of the attorneys Ms. Coffey-Garcia consulted are probative and therefore admissible regarding any issue in this case.