# Third District Court of Appeal

**State of Florida**

Opinion filed July 20, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1902
Lower Tribunal No. 13-34634

_____

**Misty Mobley, etc., et al.,**
Petitioners,

vs.

**Homestead Hospital, Inc., et al.,**
Respondents.

On Petition for Writ of Certiorari to the Circuit Court for Miami-Dade County, Thomas J. Rebull, Judge.

Diez-Arguelles & Tejedor, P.A. and Jack T. Cook and Maria D. Tejedor (Orlando); Creed & Gowdy, P.A. and Jessie L. Harrell and Bryan S. Gowdy (Jacksonville), for petitioners.

Falk, Waas, Hernandez, Cortina, Solomon & Bonner, P.A. and Glen Falk, Scott E. Solomon, and Jordan M. Bieber, for respondent Homestead Hospital, Inc.

Before SUAREZ, C.J., and WELLS and SHEPHERD, JJ.

SUAREZ, C.J.

Misty Mobley filed a lawsuit against Homestead Hospital in 2013 alleging

that her son Tavarion's disabilities are due either to medical malpractice during her

pregnancy or to medical malpractice during her son's 2009 birth. The Petitioners seek a writ of certiorari to quash an order below compelling Mobley to answer certain questions objected to at her deposition regarding her medical history and her reasons for seeking legal counsel prior to filing her medical malpractice lawsuit. We grant the petition in part, and deny in part.

Homestead Hospital, Inc. [the "Hospital"] sought discovery as to when Mobley first became aware of the possibility that her son's disabilities may be related to medical malpractice that allegedly occurred during her pregnancy and/or his birth in 2009. The Hospital sought the information in order to determine whether the lawsuit was barred by the statute of limitation for medical malpractice claims.[1] The Hospital indicated that in 2010, a law firm acting on Mobley's behalf faxed a request to the Hospital for her son's medical records, in which Mobley indicated she sought the records to be used in connection with litigation as a plaintiff. In 2011, another attorney acting on Mobley's behalf filed a petition for determination of compensability with the State of Florida for birth-related neurological injuries to her son.[2] The NICA filing was made more than two years

---

[1] The statute of limitation for medical malpractice is two years "from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence." § 95.11(4)(b), Fla. Stat. (2013). See also Tanner v. Hartog, 618 So. 2d 177 (Fla. 1993) (holding mere knowledge of an injury is not enough to trigger the running of the statute of limitations; rather, a plaintiff must also have "knowledge that there is a reasonable possibility that the injury was caused by medical malpractice.").

after the birth, and several months prior to Mobley's request to extend the statute of limitation in the underlying suit against the Hospital.

At Mobley's deposition, the Hospital asked what her reasons were for seeking legal counsel in 2010 and 2011.[3] Mobley's counsel objected on the basis of work-product and attorney-client privilege, and instructed her not to answer. The Hospital filed a motion to compel her to answer, and after a hearing the trial court granted the Hospital's motion to compel Mobley to answer "all question related to when she first sought legal counsel, the names of the attorneys with whom she consulted, and the reasons why she first sought legal counsel and any subsequent counsel."

At the same deposition, the Hospital also asked Mobley questions about any prior pregnancies and terminations she had from 1990 up to the date of Tavarion's

---

[2] The Florida Birth-Related Neurological Injury Compensation Association (NICA) was created by the Florida Legislature in 1988. NICA is a statutory organization that manages the Florida Birth Related Neurological Injury Compensation Plan ("Plan") used to pay for the care of infants born with certain neurological injuries. §766.301(2), Fla. Stat.; Fla. Birth-Related Neurological Injury Comp. Ass'n v. McKaughan, 668 So. 2d 974, 978 (Fla. 1996).

[3] The questions that the Petitioners claim invade attorney-client privilege are :
"Why did you retain Mr. Gilbert?"
"Why did you file a NICA petition?"
"And why did you go see Mr. Gilbert?"
"Why did you seek counsel in May of 2010?"
"Isn't it true that you retained the Silva firm for the purposes of pursuing a medical malpractice action?"
"And did you retain the Silva & Silva law firm for the purpose of obtaining medical records to review, whether or not there was basis for a malpractice action against Homestead Hospital in May of 2010?"

3

birth. Mobley's attorney objected on the basis of relevancy and privacy and instructed her not to answer. The Hospital asserted that it needed the termination information as prior terminations may be relevant to the cause of medical complications in subsequent pregnancies. The Hospital also sought to clarify certain discrepancies between Mobley's testimony and the medical records of her prior pregnancies and terminations. The trial court ordered Mobley to answer questions related to the terminations she had prior to Tavarion's birth; the court's order, however, specified that the information be kept confidential and only used for purposes of the instant litigation.

**Privacy issue**. The Petitioner argues that the facts of any prior pregnancies and terminations are not relevant to the instant litigation, and that the Hospital's questions about her medical history implicate constitutional privacy issues. By consenting to disclose her medical records, however, the Petitioner has voluntarily made those medical events discoverable. The Petitioner did not object on privacy grounds to the Hospital's inquiry about these medical facts at the hearing on the motion to compel. The Hospital stipulated below it would ask only where and when the terminations occurred, and the trial court correctly limited the Hospital's questions to that information. The trial court's order also specifies that the information shall be kept confidential and used only for the purposes of the instant litigation, and that the names of the fathers shall not be disclosed. Where the Petitioner voluntarily disclosed these

4

facts in her medical records, she has no expectation of privacy as to those limited facts related to prior pregnancy and termination events. We therefore deny that part of the petition for writ of certiorari which seeks to quash the trial court's order permitting the questions related to the time and location of any prior termination of a pregnancy by Petitioner. However, we affirm that portion of the order which limits the scope of such inquiry and restricts the use of the information to preserve confidentiality. We find that the order did not depart from the essential requirements of law in that respect.

**Attorney-Client privilege issue.** At her deposition, the Appellant testified that it was not until 2012 she first believed her son's medical problems may be due to possible medical malpractice. To address its statute of limitation concerns, the Hospital sought to determine when and why the Appellant thought about seeking legal counsel, when she first retained legal counsel and the name of the attorney, why she filed a NICA petition, and when and why she retained the Silva and Silva law firm.[4] The Appellant objected based on attorney-client privilege, and the Hospital moved to compel her to answer. At the hearing on the motion to compel, the trial court stated that these facts were not privileged and ordered Mobley to answer "all questions related to . . . when she first sought legal counsel, the names

---

[4] The record indicated that the law firm of Silva & Silva had requested Mobley's medical records from the Hospital in May 2010, and that attorney Gilbert had filed a NICA petition on Mobley's behalf in October 2011.

of the attorneys with whom she consulted and the reasons why she first sought legal counsel and any subsequent counsel."

The contents of confidential communications between the attorney and client are privileged and not discoverable, whereas dates, places, and names of consulted counsel are generally not privileged and are discoverable.[5] See § 90.502, Fla. Stat. (2016); Upjohn Co. v. United States, 449 U.S. 383 (1981). That part of the order, however, requiring the Petitioner to answer "all questions related to . . . the reasons why she first sought out legal counsel and any subsequent counsel," is overly broad and has the potential to stray into privileged and confidential communications. We agree that, "[w]hile [appellant] can be required to answer factual questions about what she learned at various points in time concerning the nature and potential causes of her [child's] condition from sources other than the attorneys she consulted, she cannot be forced to answer questions that would require her to reveal the contents of advice or information she received from the attorneys." Coffey-Garcia v. South Miami Hospital, Inc., No. 3D15-1966 (Fla. 3d DCA June 22, 2016). On the other hand, questions carefully constructed to determine Mobley's intentions, thoughts, and general motivations for seeking legal counsel – as long as that information was not based upon initial or subsequent communications with counsel – are not protected by the attorney-client privilege

---

[5] As indicated in the Hospital's Answer Brief, Mobley does not challenge those portions of the order that require her to answer when she first sought counsel and the names of those attorneys.

6

and are discoverable.  See Boyles v. Mid-Florida Television Corp., 431 So. 2d 627, 639 (Fla. 5th DCA 1983), app'd, 467 So. 2d 282 (Fla. 1985) (holding the attorney-client privilege does not extend beyond the substance of the client's confidential communications to the attorney).

We therefore grant the petition for writ of certiorari solely to quash that portion of the order requiring the Petitioner to answer "all questions related to  . . . the reasons why she first sought out legal counsel and any subsequent counsel" solely because it is too broad and could be understood to include information received by Mobley from one of her attorneys.  Certainly, Mobley can be asked and required to answer factual questions about what she learned at various points in time concerning the nature and potential causes of Tavarion's condition from sources other than the attorneys she consulted.  She can also be required to respond to questions concerning her intentions, thoughts and reasons for seeking legal counsel so long as those intentions, thoughts and reasons were not informed by communications with counsel.

Petition granted in part, denied in part.