[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14281
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cv-01324-HES-MCR

MOZELLA BARR,
an individual,
CHRISTOPHER BARR,
an individual,

                                        Plaintiffs - Appellants,

versus

THOMAS EWING,
an individual,

                                        Defendant,

NOVELIS CORPORATION,
a foreign for profit corporation,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 21, 2019)

Before MARCUS, NEWSOM, and HULL, Circuit Judges.

PER CURIAM:

Mozella and Chris Barr sued Novelis Corporation in negligence after one of the company's employees struck Mozella with a car.  The jury found that Mozella and the driver were equally at fault for the incident but declined to award any damages to the Barrs.  On appeal, the Barrs argue (1) that the district court improperly admitted a medical record authorization form that they say was protected by the attorney-client privilege, (2) that the jury verdict was "inconsistent and inadequate," (3) that the district court failed to dismiss for cause a juror who had not disclosed a prior injury during voir dire that bore on his ability to remain impartial, and (4) that because they are "entitled to a new trial," they are similarly "entitled to a reversal of the district court's attorney's fees and costs award."  After careful review, we affirm.

## I

Before we proceed, we must first assess whether we have subject matter jurisdiction over this appeal.  *See Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1304 (11th Cir. 2011) (per curiam) ("We are obligated to raise concerns about the district court's subject matter jurisdiction *sua sponte*.") (citation omitted).  Because this case presents no federal question, we

2

must be "satisfied that no plaintiff is a citizen of the same state as any defendant." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013).

As a general matter, we determine the citizenship of the parties from the factual allegations in the complaint. *See id.* at 1268–69 (citations omitted). Although the Barrs allege that Novelis's principal place of business is in Georgia, this allegation is incomplete. The complaint fails to identify Novelis's state of incorporation, as is required given the dual-citizenship of corporations. *See* 28 U.S.C. § 1332(c)(1). Worse still, the complaint is devoid altogether of allegations of the Barrs' citizenship, as the complaint merely states that they "reside[] in Duval County, Florida." *See Travaglio*, 735 F.3d at 1269 (stating that the allegations of citizenship in a complaint "are fatally defective" because "[r]esidence alone is not enough"). Accordingly, we issued a jurisdictional question asking the parties to address whether the allegations should be amended on appeal pursuant to 28 U.S.C. § 1653, or alternatively, whether the record provides adequate assurances that the parties are completely diverse.

Having received the parties' responses, we are satisfied that we have jurisdiction over this appeal. Though the Barrs' statement that they "are citizens of the United States" is clearly insufficient, they further acknowledge that they have "lived in Jacksonville, Florida for 28 years." We have, to be sure, been hesitant to credit unsworn, self-serving professions of citizenship in the past. *See Travaglio*,

3

735 F.3d at 1270. But such statements, when combined with record evidence, can cure otherwise defective allegations of citizenship. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342 n.12 (11th Cir. 2011). Here, Mozella gave sworn testimony at trial that she and her husband have lived at their Jacksonville address for over 17 years. Moreover, the record contains the Barrs' federal tax returns from 2011 through 2014 that further suggest that they permanently reside in Jacksonville. Thus, we may safely conclude that the Barrs are citizens of Florida. *See id.* at 1342 (crediting deposition testimony that a litigant "permanently resides . . . in Florida" and explaining that "we may presume that, until controverted by fact, he is domiciled at his current residence").

As to Novelis, the company acknowledged that its "jurisdiction of incorporation" is Texas and appended its most recent Form 10-K to its response to our jurisdictional question. In our circuit, judicial notice "is a valid substitute for proof in connection with jurisdictional questions." *United States v. Benson*, 495 F.2d 475, 481 (5th Cir. 1974).[1] Because the Form 10-K was filed under penalty of perjury with the Securities and Exchange Commission, we think it clear that the document's "accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). *Cf. Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015)

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981.

(concluding that "the accuracy of . . . public records contained on the Mississippi Secretary of State's and the Virginia State Corporation Commission's websites cannot reasonably be questioned").  We therefore conclude that Novelis is a citizen of both Texas—its state of incorporation—and Georgia—its principal place of business.  *See* 28 U.S.C. § 1332(c)(1).

Based on the foregoing, we conclude that the parties are completely diverse, and thus that the district court properly exercised jurisdiction over this case.

## II

On the merits, the Barrs first argue that the district court erred in admitting into evidence an authorization form that permitted Mozella's doctors to share her medical records with her attorney.  They claim that the document was protected by the attorney-client privilege and that its admission "unfairly prejudiced" them because it allowed Novelis to "insinuate" that their attorney "had sent Mrs. Barr to a particular medical provider in order to manufacture a lawsuit."

Because state law supplies the rule of decision in this case, we must apply Florida attorney-client privilege principles to determine whether the district court erred here.  *See* Fed. R. Evid. 501.  The Barrs cite *Worley v. Central Florida YMCA, Inc.*, 228 So. 3d 18 (Fla. 2017), for the proposition that, under Florida law, "the question of whether a plaintiff's attorney referred [the plaintiff] to a doctor for treatment is protected by the attorney-client privilege." *Id.* at 25.  We agree—to an

5

extent—that this is an accurate characterization of *Worley* but disagree that the case extends so far as to preclude the admission of the form here.

The *Worley* court held that a defense attorney may not "ask[] a plaintiff whether his or her attorney referred the plaintiff to a physician for treatment" because "[a] communication between lawyer and client is confidential." *Id.* at 25 (quoting Fla. Stat. § 90.502(2)). But while the *communication* remains privileged, "the fact of consultation or employment" is not. *Coffey-Garcia v. S. Miami Hosp., Inc.*, 194 So. 3d 533, 537 (Fla. Dist. Ct. App. 2016). In other words, requiring a litigant "to reveal when and with whom she consulted for the general purpose of discussing possible legal remedies" stemming from an injury "does not . . . implicate the attorney-client privilege." *Id.* at 538. *See also Burt v. Gov't Emps. Ins. Co.*, 603 So. 2d 125, 125 (Fla. Dist. Ct. App. 1992) (per curiam) (holding that a question asking when an individual obtained counsel "does not violate the attorney-client privilege"). Because the medical authorization form merely shows the date of authorization—*i.e.*, the date on which the Barrs hired their attorney— the document was not protected by the attorney-client privilege.

Nor can we say that the Barrs are entitled to a new trial because they were "prejudicially surprised" by the document's introduction. Even if we assume that the Barrs could conceivably be "surprised" by a document that Mozella herself signed, "the remedy for coping with surprise is not to seek reversal after an

6

unfavorable verdict, but a request for continuance at the time the surprise occurs."
*O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1549 (11th Cir.
1984) (citations and quotations omitted), *overruled on other grounds by Lindsey v.
Am. Cast Iron Pipe Co.*, 810 F.2d 1094, 1096 (11th Cir. 1987).  The Barrs made no
such request before the district court.  We therefore conclude that the Barrs are not
entitled to a new trial based on the document's admission.

## III

Next, the Barrs argue that they are "entitled to a new trial because the verdict
was inconsistent and inadequate."  In particular, they fault the jury for its decision
not to award them any damages despite the fact that it found Novelis to be 50
percent negligent.

The Barrs have forfeited the opportunity to challenge the alleged
inconsistency, however.  A "party must object to a verdict as inconsistent before
the jury has been dismissed."  *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254,
1259 (11th Cir. 2015) (citing *Walter Int'l Prods., Inc. v. Salinas,* 650 F.3d 1402,
1419–20 (11th Cir. 2011)).  This requirement is not just a matter of form; "[t]he
reason for this particular raise-it-or-lose-it rule," we have said, is that "the jury can
be sent back for further deliberations to resolve the inconsistency in its verdict or
interrogatory answers, but once the jury is gone that is not possible."  *Id.* (citations
and quotations omitted).  Here, the record is clear that the Barrs raised the

7

argument that "[a] finding of fault and percentage with no damages whatsoever would be inconsistent" only after the district court dismissed the jury. We decline, then, to entertain the Barrs' suggestion that they are entitled to a new trial on this basis.

## IV

The Barrs also argue that they are entitled to a new trial because a juror failed to disclose during voir dire that he had suffered a severe head injury 31 years prior. The juror's statement that he "had no interest in suing anyone, even though [the tortfeasor] was negligent," the Barrs contend, suggests that the juror had "some bias against automobile lawsuits and the civil justice system." Thus, they argue that the district court erred by failing to dismiss the juror for cause. We disagree.

"Determinations as to the impartiality of a juror are committed to the discretion of the trial judge and will not be grounds of reversal absent an abuse of discretion." *United States v. Carlin*, 698 F.2d 1133, 1135 (11th Cir. 1983) (citation omitted). To obtain a new trial, the Barrs must demonstrate that a "juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). We

8

must consider the juror's apparent motives as well, as "only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id.*

Even if the Barrs have shown that the juror "failed to answer honestly a material question on voir dire," they cannot show that "a correct response would have provided a valid basis for a challenge for cause." *Id.* The latter inquiry "requires a showing of actual bias," which in turn requires either an "express admission" or "proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1473 (11th Cir. 1992) (quotations and citation omitted). The Barrs cannot make either showing here. There is no indication from the record that the juror deliberately sought to mislead, and he promptly informed the district court as soon as he recalled his decades-old injury. Moreover, and notwithstanding the Barrs' suggestion to the contrary, the juror's decision not to sue anyone for his injury does not necessarily imply any hostility toward personal injury claims broadly. And perhaps most crucially, the juror reaffirmed his commitment to remain impartial after questioning by the district court. Therefore, the district court did not abuse its discretion in declining to dismiss the juror.

**V**

Finally, the Barrs argue that the "district court's attorney's fees and cost award must be reversed" because they "are entitled to a motion for a judgment as a matter of law or a new trial." But because the Barrs have not identified any reversible error, we affirm the district court's decision to award fees and costs in Novelis's favor.

**AFFIRMED**