# Third District Court of Appeal

## State of Florida

Opinion filed June 29, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-834
Lower Tribunal No. 21-2381

_____

**William Hamilton Arthur Architect, Inc., et al.,**
Petitioners,

vs.

**Jeffrey C. Schneider,**
Respondent.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Carlos Lopez, Judge.

The Solomon Law Group, P.A., and Stanford R. Solomon and Laura H. Howard (Tampa), for petitioners.

Alvarez, Feltman, Da Silva & Costa, PL, and Paul B. Feltman; Law Offices of Robert P. Frankel, P.A., and Robert P. Frankel (Plantation), for respondent.

Before SCALES, HENDON and GORDO, JJ.

SCALES, J.

Petitioner William Hamilton Arthur, IV, a co-defendant below,[1] seeks certiorari review of an April 19, 2022 order that requires Arthur to: (i) produce for *in camera* inspection certain communications between Arthur and his legal counsel; and (ii) permit respondent Jeffrey C. Schneider, the plaintiff below, to make a digital copy of Arthur's electronic device so that the trial court can review *in camera* Arthur's internet searches. We have jurisdiction.[2]

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

After Arthur hired a new lawyer to defend Arthur against Schneider's architectural malpractice claims, Arthur sent a funeral flower arrangement to Schneider's counsel, accompanied by an unsigned note that read, "Please be advised that I am changing counsel, and accept my belated birthday gift":

---

[1] Co-petitioner William Hamilton Arthur Architect, Inc., the other co-defendant below, is Arthur's professional corporation. For sake of ease, the co-petitioners will be referred to together herein as "Arthur."

[2] See Coffey-Garcia v. S. Miami Hosp., Inc., 194 So. 3d 533, 536 (Fla. 3d DCA 2016) (recognizing an appellate court has certiorari jurisdiction to quash an order that requires a party to disclose communications protected by the attorney-client privilege); Holland v. Barfield, 35 So. 3d 953, 955 (Fla. 5th DCA 2010) (recognizing an appellate court has certiorari jurisdiction to quash an order that – without proof there is no less intrusive method of obtaining the information – permits the respondent to examine the petitioner's computer hard drive).



Upon receiving the floral arrangement, Schneider's lawyer allegedly felt threatened and not only filed a police report, but also, on behalf of Schneider, filed below "Plaintiff's Motion for Sanctions Against Defendants as a Result of Defendant, William Hamilton Arthur, IV's Disturbing and Deranged Litigation Misconduct" ("the contempt motion"). In response, Arthur filed an affidavit wherein Arthur attested, among other things, that "I thought my name would be included on the delivery" and "[t]he flowers were not selected because of any funeral overtones." Arthur's affidavit gave a detailed account of the internet searches Arthur allegedly performed to identify the local flower shop's website, claiming that he had selected the "Peaceful Pink Heart Wreath" arrangement arbitrarily based on the website's

3

picture and a generic description of the arrangement. Further, Arthur attested that he put the "belated birthday gift" comment in the note that accompanied the flowers because Arthur knew that Schneider's attorney had recently had a birthday.

Following a non-evidentiary hearing on the contempt motion, the trial court entered an order setting an evidentiary hearing for Arthur to show cause as to why Arthur should not be held in contempt and subject to sanctions ("the show cause hearing"). In addition, the trial court entered the challenged April 19, 2022 order that required Arthur, prior to the show cause hearing, to: (i) produce to the trial court for *in camera* review "all communications with [Arthur's] counsel and insurance carrier" regarding Arthur's ordering of the flowers; and (ii) permit Schneider "to take an image of the device [Arthur] used (whether cell phone, laptop, computer, or other device) to purchase the flowers at issue so the Court can review *in camera* [Arthur's] Google searches and the results thereof." Finally, the challenged order prohibited Arthur from directly communicating with Schneider or Schneider's counsel.

Arthur then filed the instant petition in this Court asserting that (i) the portion of the challenged order requiring the production of communications between Arthur and his counsel violated the attorney-client privilege, and (ii)

4

the portion of the challenged order requiring Arthur to turn his electronic device over to Schneider violated Arthur's privacy rights.[3] We stayed the order and we now quash the challenged portions of the order.

## II.     ANALYSIS

Over fifty years ago, The Rolling Stones promulgated a guide to when, how, and under what circumstances to send flowers to an adversary:

> And you can send me dead flowers every morning
> Send me dead flowers by the mail
> Send me dead flowers to my wedding
> And I won't forget to put roses on your grave.[4]

Notably absent from these protocols is a party sending flowers to opposing counsel as a means of providing notice that the party has hired a new attorney.

To be clear, we certainly do not condone Arthur's odd actions. Depending upon the trial court's findings at the show cause hearing, Arthur's conduct may very well result in the imposition of sanctions. Indeed, at the

---

[3] As detailed more specifically in footnote 6, infra, Arthur does not challenge that portion of the order requiring Arthur to produce communications solely between Arthur and his insurance carrier. Nor does Arthur challenge that aspect of the order requiring Arthur to have no direct communications with Schneider or Schneider's counsel.

[4] THE ROLLING STONES, Dead Flowers, on STICKY FINGERS (Rolling Stones Records 1971).

non-evidentiary hearing on the contempt motion, Arthur's new counsel freely conceded that Arthur's actions were inappropriate. The propriety of Arthur's conduct, though, is not before us. Our inquiry is limited to whether the challenged order violates the attorney-client privilege and Arthur's privacy rights. See Coffey-Garcia, 194 So. 3d at 536; Holland, 35 So. 3d at 955.

*A. The Attorney-Client Privilege*

"Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." Lee v. Condell, 208 So. 3d 253, 257 (Fla. 3d DCA 2016) (quoting Fisher v. U.S., 425 U.S. 391, 403 (1976)). Absent extraordinary circumstances delineated by section 90.502 of the Florida Statutes – the statute that codifies the attorney-client privilege – neither the lawyer nor the client can be compelled to disclose the content of private communications protected by the privilege. R.L.R. v. State, 116 So. 3d 570, 573, n.4 (Fla. 3d DCA 2013).

Section 90.502 provides that "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to client." § 90.502(2), Fla. Stat. (2022). Any communication between a lawyer and a client that is not intended to be disclosed to a third person is

considered to be "confidential." § 90.502(1)(c), Fla. Stat. (2022). Section 90.502 identifies only five statutory exceptions to attorney-client privilege:

> (4) There is no lawyer-client privilege under this section when:
>
> (a) The services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud.
>
> (b) A communication is relevant to an issue between parties who claim through the same deceased client.
>
> (c) A communication is relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer, arising from the lawyer-client relationship.
>
> (d) A communication is relevant to an issue concerning the intention or competence of a client executing an attested document to which the lawyer is an attesting witness, or concerning the execution or attestation of the document.
>
> (e) A communication is relevant to a matter of common interest between two or more clients, or their successors in interest, if the communication was made by any of them to a lawyer retained or consulted in common when offered in a civil action between the clients or their successors in interest.

§ 90.502(4)(a)-(e), Fla. Stat. (2022).

Although Schneider's contempt motion did not argue that any of the statutory exceptions to the privilege applied, at the hearing on the contempt motion, Schneider's counsel suggested, in conclusory fashion, that the privilege did not apply because Arthur's conduct "possibly is a crime" and, therefore, "we need to know whether [Arthur's] lawyers knew about this."

7

Though not entirely clear, it appears that Schneider's counsel was relying upon section 90.502(4)(a), commonly referred to as the crime-fraud exception to the attorney-client privilege.[5]

To trigger the applicability of section 90.502(4)(a), however, it is incumbent upon the party seeking the disclosure of the privileged communication to (i) "[f]irst, . . . allege that the communication was made as part of an effort to perpetrate a crime or fraud, and the party must also specify the crime or fraud," and (ii) "[s]econd, . . . establish a prima facie case that the party asserting the attorney-client privilege sought the attorney's advice in order to commit, or in an attempt to commit, a crime or fraud." Butler, Pappas, Weihmuller, Katz, Craig, LLP v. Coral Reef of Key Biscayne Developers, Inc., 873 So. 2d 339, 342 (Fla. 3d DCA 2003). If the proponent fails to meet this threshold burden, the trial court cannot require that the communications be produced to the trial court for an *in camera* review. See First Union Nat'l Bank v. Turney, 824 So. 2d 172, 183 (Fla. 1st DCA 2001) ("Absent agreement otherwise, the trial judge should not examine written communications between attorney and client, unless the party seeking to establish the crime-fraud exception adduces competent evidence, apart from

---

[5] We note that, in his briefing to this Court, Schneider seems to have abandoned the argument made below that the crime-fraud exception to the attorney-client privilege applies here.

the disputed documents, that would lead a reasonable person to believe that such an examination would reveal that the communications were part of an effort to perpetrate some crime or fraud." (citing United States v. Zolin, 491 U.S. 554, 572 (1989))).

Schneider failed to meet this threshold burden, and does not assert that any other exception to the attorney-client privilege applies here; hence, we are compelled to quash that portion of the order that requires the production of communications between Arthur and his counsel.[6]

*B. Arthur's Privacy Rights*

At the non-evidentiary hearing on the contempt motion, sensing that the trial court seemed skeptical of the averments in Arthur's affidavit, Arthur's counsel offered to allow the trial court to question Arthur under oath. The trial court declined this offer, and instead entered the challenged order requiring Arthur to turn over to Schneider the electronic device that Arthur had used to

---

[6] Arthur does not argue that the privilege applies here to any communications solely between Arthur and his insurance carrier. Hence, *except to the extent that Arthur's new counsel or insurance counsel was a party to such communications*, we do not quash that portion of the order that requires Arthur to produce "all communications with [Arthur's] . . . insurance carrier" regarding Arthur's ordering of the flowers. See United Servs. Auto. Ass'n v. Law Offices of Herssein & Herssein, P.A., 233 So. 3d 1224, 1231 (Fla. 3d DCA 2017) ("[C]ommunications between an insurer and the lawyer hired by the insurer to protect the insured's interests are protected by the attorney/client privilege because the insurer and insured share a common interest in the outcome of the case.").

purchase the flowers. The order provided no restrictions on Schneider, other than requiring Schneider to "take an image of the device [Arthur] used" so that the trial court could conduct an *in camera* review of Arthur's internet searches.

It appears the trial court ordered Arthur to produce his electronic device as a means of confirming the veracity of the averments in Arthur's affidavit regarding the steps Arthur took to purchase the flower arrangement. Intrusive searching of an electronic device, though, should not be the *first* means of obtaining relevant information. See Menke v. Broward Cnty. Sch. Bd., 916 So. 2d 8, 11-12 (Fla. 4th DCA 2005). Rather, before ordering Arthur to turn his electronic device over to his litigation adversary, the trial court should have first considered less intrusive means of obtaining the information that the trial court deemed relevant to adjudicate the contempt motion. Id.; Holland, 35 So. 3d at 955-56. "Where a need for electronically stored information is demanded, such searching should first be done by [Arthur] so as to protect confidential information, unless, of course, there is evidence of data destruction designed to prevent the discovery of relevant evidence in the particular case." Menke, 916 So. 2d at 12. For example, the trial court might have ordered Arthur to produce a printout of the electronic

device's internet search history for the particular time period in question, but only as it related to the purchase of the flowers.

Moreover, to the extent a less intrusive method of obtaining the information does not exist – a circumstance not shown here – the challenged order is deficient because it fails to "define parameters of time and scope, and . . . place sufficient access restrictions to prevent compromising . . . confidentiality and to prevent harm to [the device]." Id. at 11 (quoting Strasser v. Yalamanchi, 669 So. 2d 1142, 1145 (Fla. 4th DCA 1996)); Holland, 35 So. 3d at 956 ("The unlimited breadth of the trial court's order allows Respondent to review, without limit or time frame, all of the information on Petitioner's computer and mobile phone SIM card without regard to her constitutional right of privacy and the right against self-incrimination or privileges, including attorney-client, work product.").

Because the trial court failed to consider less intrusive means of obtaining the requested information and because the challenged order grants Schneider unfettered access to Arthur's electronic device that did not protect against disclosure of confidential and privileged information, we conclude that the trial court's order "depart[s] from the essential requirements of law and would cause material injury to [Arthur] throughout

11

the remainder of the proceeding below, effectively leaving no adequate remedy on appeal." <u>Holland</u>, 35 So. 3d at 956.

## III.    CONCLUSION

We therefore grant the petition and, subject to the qualification in footnote 6, *supra*, we quash those portions of the challenged order that require Arthur, prior to the show cause hearing, to: (i) produce to the trial court for *in camera* review all communications between Arthur and his counsel regarding Arthur's ordering of the flowers; and (ii) permit Schneider to take an image of the hard drive of the device Arthur used to order the flowers so that the trial court could also review *in camera* Arthur's "Google searches and the results thereof."

Petition granted.